# 23-1194

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

LINDA M. LESLIE, Regional Director of the Third Region
of the National Labor Relations Board for and on behalf
of the National Labor Relations Board,

> Petitioner-Counter-Defendant-Appellant,

> v.

STARBUCKS CORP.,

> Respondent-Counter-Claimant-Appellee.

———————————

**On Appeal from the United States District Court for the Western
District of New York, 1:22-cv-00478-JLS (W.D.N.Y.)**

———————————

## BRIEF OF REGIONAL DIRECTOR LINDA M. LESLIE

JENNIFER A. ABRUZZO
  *General Counsel*
PETER SUNG OHR
  *Deputy General Counsel*
RICHARD A. BOCK
  *Associate General Counsel*
NANCY E. KESSLER PLATT
  *Associate General Counsel*
RICHARD J. LUSSIER
  *Deputy Assoc. General Counsel*
DAWN L. GOLDSTEIN
  *Deputy Assoc. General Counsel*
ROBERT N. ODDIS
  *Assistant General Counsel*

LAURA T. VAZQUEZ
  *Deputy Assistant General Counsel*
KEVIN P. FLANAGAN
  *Deputy Assistant General Counsel*
PAUL A. THOMAS
  *Supervisory Trial Attorney*
DAVID P. BOEHM
  *Trial Attorney*
MADELINE Y. CORKETT
  *Trial Attorney*

NATIONAL LABOR RELATIONS BOARD
1015 HALF STREET, S.E., 4TH FLOOR
WASHINGTON, DC 20003
202-273-4202

# **TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT ........................................................... 1

STATEMENT OF ISSUES ...................................................................... 1

STANDARD OF REVIEW ...................................................................... 3

STATEMENT OF THE CASE ................................................................. 5

  I.  A nationwide organizing campaign begins at a Starbucks in Buffalo, New York; the NLRB holds an administrative unfair labor practice hearing. ..................................................................... 6

  II.  The Director petitions for injunctive relief against Starbucks. ....... 9

    A.  This case is filed, and the district court grants Starbucks's request for expedited discovery. ......................................... 9

    B.  Starbucks issues subpoenas to nonparties asking for documents related to the Union's organizing; the NLRB and Union object. ...... 10

    C.  The district court requires the nonparties to produce confidential communications arguably protected by Section 7; the subpoena recipients refuse to comply and seek mandamus. ............................. 13

    D.  The Union alleges that Starbucks's subpoenas violate the NLRA and Region 3 issues the Guess? unfair-labor-practice complaint; an Agency ALJ finds nearly all of the subpoena requests unlawful. .... 15

    E.  The NLRB renews its motion to quash the subpoenas, alternatively seeking reconsideration or certification of an interlocutory appeal, and then seeks an extraordinary writ from this Court. .................................................................................. 17

    F.  An employee petitions to decertify the Union at one of the stores involved in the 10(j) case; after this Court denies the writ petitions, the Director and Union seek reconsideration based on new developments; the district court dismisses the 10(j) petition. .......... 18

SUMMARY OF ARGUMENT ................................................................ 20

ARGUMENT ......................................................................................... 23

i

I.   The district court erred by failing to apply the proper standards for expedited and nonparty discovery and refusing to consider statutory confidentiality interests..................................................................23

  A.  The NLRA creates confidentiality interests in labor activity; discovery determinations must consider these interests and the public interest. ....................................................................24

  B.  The proponent of expedited discovery bears the burden of showing that its requests are reasonable and supported by good cause; Starbucks's requests met neither requirement.......................27

  C.  Rule 45 requires a higher showing to support discovery requests that impose burdens on nonparties. ...................................30

  D.  The district court failed to consider public interests...................34

  E.  The discovery sought would not support a valid defense............36

II.  Denial of reconsideration of the district court's discovery determinations in the face of significant facts and authority— including an order of this Court—was an abuse of discretion.............40

III. Neither the Federal Rules, nor any other authority, permitted dismissal of the Director's injunction petition. ....................................42

  A.  Rule 37(b) provides no authority to impose sanctions against the Director based on nonparties' conduct................................43

  B.  No exception applies allowing the conduct of others to be attributable to the Director. ..............................................45

  C.  Even if Rule 37 applied to this case, it would still not justify the sanction of dismissal. .........................................................47

IV. The district court's dismissal order was not a permissible exercise of its equitable or inherent authority. ..................................................51

V.  The district court lacked jurisdiction to dictate the outcome of an executive branch proceeding as a condition of adjudicating a petition for statutory injunctive relief. ...............................................................54

  A.  Decades of settled law preclude district courts from interfering in pending NLRB proceedings. ............................................55

B.  A district court order requiring the "termination" of an NLRB proceeding interferes with the jurisdiction of the courts of appeals. 56

C.  A district court may not hijack an administrative proceeding to further judicial objectives. .................................................. 58

VI. This Court should remand with instructions to grant the injunction and reassign the case to a different judge. ........................ 63

A.  The record supports the requested injunction; no further proceedings are necessary on that issue. .......................................... 63

B.  On remand, this case should be reassigned to preserve the appearance of justice, because the district judge publicly questioned the legitimacy and fairness of Board proceedings. ........................... 70

CONCLUSION ....................................................................................... 74

## TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*Abbey's Transp. Servs., Inc. v. NLRB,*
  837 F.2d 575 (2d Cir. 1988) .................................................................68

*Aguayo v. Tomco Carburetor Co.,*
  853 F.2d 744 (9th Cir. 1988) ................................................................64

*Ahearn v. Jackson Hosp. Corp.,*
  351 F.3d 226 (6th Cir. 2003) ................................................................66

*Albrecht v. NLRB,*
  181 F.2d 652 (7th Cir. 1950) ................................................................50

*Amer. Sav. Bank, FSB v. UBS PaineWebber, Inc.* (*In re Fitch, Inc.*),
  330 F.3d 104 (2d Cir. 2003) ...................................................................4

*Analytical Surveys, Inc. v. Tonga Partners, L.P.,*
  684 F.3d 36 (2d Cir. 2012) .....................................................................4

*Aptix Corp. v. Quickturn Design Sys., Inc.,*
  269 F.3d 1369 (Fed. Cir. 2001) ............................................................53

*Arlook ex rel. NLRB v. S. Lichtenberg & Co.,*
  952 F.2d 367 (11th Cir. 1992) ..............................................................37

*Baker v. F & F Inv.,*
  470 F.2d 778 (2d Cir. 1972) .................................................................26

*Beth Israel Hosp. v. NLRB,*
  437 U.S. 483 (1978) ..............................................................................24

*Bloedorn v. Francisco Foods, Inc.,*
  276 F.3d 270 (7th Cir. 2001) ................................................................65

*Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.,*
  502 U.S. 32 (1991) ................................................................................56

*Bokat v. Tidewater Equip. Co.,*
  363 F.2d 667 (5th Cir. 1966) ................................................................56

*Bowsher v. Synar,*
  478 U.S. 714 (1986) ..............................................................................60

*Brown & Williamson Tobacco Corp. v. FTC,*
  717 F.2d 963 (6th Cir. 1983) ................................................................63

*Cazorla v. Koch Foods of Miss. L.L.C.,*
  838 F.3d 540 (5th Cir. 2016) ..........................................................34, 35

*Cent. Hardware Co. v. NLRB,*
  407 U.S. 539 (1972) ..............................................................................24

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)..................................................................4, 52

*Chino Valley Med. Ctr.*,
  362 NLRB 283 (2015) ................................................................25

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
  602 F.2d 1062 (2d Cir. 1979) ...............................................47, 50

*Commodity Futures Trading Comm'n v. Schor*,
  478 U.S. 833 (1986)....................................................................61

*Cruz v. Meachum*,
  159 F.R.D. 366 (D. Conn. 1994) ...............................................44

*Cunningham v. United States*,
  748 F.3d 1172 (Fed. Cir. 2014) .................................................61

*Cusumano v. Microsoft Corp.*,
  162 F.3d 708 (1st Cir. 1998) .....................................................31

*Dietz v. Bouldin*,
  579 U.S. 40 (2016)......................................................................52

*Dimension Data N. Am., Inc. v. NetStar-1, Inc.*,
  226 F.R.D. 528 (E.D.N.C. 2005) ..............................................29

*DirecTV, Inc. v. NLRB*,
  837 F.3d 25 (D.C. Cir. 2016)......................................................36

*Dorrah v. United States*,
  282 F.R.D. 442 (N.D. Iowa 2012) .............................................29

*Emporium Capwell Co. v. W. Addition Cmty. Org.*,
  420 U.S. 50 (1975).......................................................................5

*Fisher v. Marubeni Cotton Corp.*,
  526 F.2d 1338 (8th Cir. 1975)...............................................44, 45

*Gen. Ins. Co. of Am. v. E. Consol. Utilities, Inc.*,
  126 F.3d 215 (3d Cir. 1997) ......................................................45

*Guess? Inc.*,
  339 NLRB 432 (2003) ........................................................2, 25, 26

*Goethe House New York, German Cultural Center v. NLRB*,
  869 F.2d 75 (2d Cir. 1989) .....................................................56, 62

*Goetz v. Crosson*,
  41 F.3d 800 (2d Cir. 1994) ..........................................................4

*Hammond Packing Co. v. Arkansas*,
  212 U.S. 322, (1909)...................................................................51

*Hedges v. Dixon Cnty.*,
  150 U.S. 182 (1893)....................................................................54

v

*Herbst v. Able*,
  63 F.R.D. 135 (S.D.N.Y. 1972) .................................................... 46
*Hernandez v. Office of the Comm'r of Baseball*,
  331 F.R.D. 474 (S.D.N.Y. 2019) ........................................... 31, 35
*Hoffman v. Inn Credible Caterers, Ltd.*,
  247 F.3d 360 (2d Cir. 2001) ............................... 3, 40, 64, 66
*Horne v. Coughlin*,
  178 F.3d 603 (2d Cir. 1999) ...................................................... 58
*In re Att'y Gen. of U. S.*,
  596 F.2d 58 (2d Cir. 1979) ......................................................... 48
*In re Dunne*,
  No. 3:17-CV-1399 (MPS), 2018 WL 4654698 (D. Conn. Sept. 27, 2018)
  ................................................................................................... 46
*In re Exxon Valdez*,
  142 F.R.D. 380 (D.D.C. 1992) ................................................ 45
*In re IBM Corp.*,
  687 F.2d 591 (2d Cir. 1982) ...................................................... 60
*In re Shoreline Concrete Co., Inc.*,
  831 F.2d 903 (9th Cir. 1987) .................................................... 54
*Irish Lesbian & Gay Org. v. Giuliani*,
  918 F. Supp. 728 (S.D.N.Y. 1996) .......................................... 28
*Jones v. Niagara Frontier Transp. Auth.*,
  836 F.2d 731 (2d Cir. 1987) ....................................................... 4
*Kaiser Steel Corp. v. Mullins*,
  455 U.S. 72 (1982) ...................................................................... 27
*Kaynard v. Indep. Routemen's Ass'n*,
  479 F.2d 1070 (2d Cir. 1973) ............................................ 63, 64
*Kaynard v. Mego Corp.*,
  633 F.2d 1026 (2d Cir. 1980) ............................................ 65, 66
*Kobell v. Suburban Lines*,
  731 F.2d 1076 (3d Cir. 1984) ............................................ 40, 53
*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) .................................................................... 55
*Kosty v. Lewis*,
  319 F.2d 744 (D.C. Cir. 1963) .................................................. 63
*Kreisberg v. HealthBridge Mgmt., LLC*,
  732 F.3d 131 (2d Cir. 2013) .............................................. 53, 65

*Leedom v. Kyne*,
  358 U.S. 184 (1958)................................................................56
*Ligon v. City of N.Y.*,
  736 F.3d 118 (2d Cir. 2013) ................................................70
*Local 32B-32J SEIU v. NLRB*,
  982 F.2d 845 (2d Cir. 1993) ................................................62
*Madigan v. Bronstein*,
  No. 18MC61, 2018 WL 1768283 (S.D.N.Y. Apr. 12, 2018)..................44
*Markus v. Rozhkov*,
  615 B.R. 679 (S.D.N.Y. 2020) ..............................................44
*Martin v. Franklin Cap. Corp.*,
  546 U.S. 132 (2005)............................................................23
*Mazzocchi v. Windsor Owners Corp.*,
  No. 11CIV.7913 AT, 2014 WL 594085 (S.D.N.Y. Feb. 11, 2014) .........43
*McKinney v. Starbucks Corp.*,
  77 F.4th 391 (6th Cir. 2023) ................................................38
*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*,
  194 F.R.D. 618 (N.D. Ill. 2000)............................................28
*Morrison v. Olson*,
  487 U.S. 654 (1988)............................................................60
*Mullane v. Almon*,
  339 F.R.D. 659 (N.D. Fla. 2021) ..........................................28
*Myers v. Bethlehem Shipbuilding Corp.*,
  303 U.S. 41 (1938)................................................55, 56, 57
*Nat'l Archives & Recs. Admin. v. Favish*,
  541 U.S. 157 (2004)............................................................52
*Nat'l Nurses Org. Cmte.*,
  370 NLRB No. 128, slip op. at 1 (2021) ................................49
*Nat'l Tel. Directory Corp.*,
  319 NLRB 420 (1995) ........................................................25
*NLRB v. City Disposal Systems, Inc.*,
  465 U.S. 822 (1984)............................................................37
*NLRB v. Gissel Packing Co.*,
  395 U.S. 575 (1969)........................................................9, 68
*NLRB v. Jamaica Towing, Inc.*,
  632 F.2d 208 (2d Cir. 1980) ..........................................41, 68
*NLRB v. Robbins Tire & Rubber Co.*,
  437 U.S. 214 (1978)............................................................26

*Overstreet v. El Paso Elec. Co.*,
  176 F. App'x 607 (5th Cir. 2006) ........................................... 38
*Pac. Molasses Co. v. NLRB*,
  577 F.2d 1172 (5th Cir. 1978) .............................................. 25
*Palby Lingerie*,
  625 F.2d ........................................................................ 68
*Pascarell v. Vibra Screw, Inc.*,
  904 F.2d 874 (3d Cir. 1990) ................................................ 64
*Pennwalt Corp. v. Durand-Wayland, Inc.*,
  708 F.2d 492 (9th Cir. 1983) ............................................... 44
*Phelps Dodge Corp. v. NLRB*,
  313 U.S. 177 (1941) ........................................................... 5
*R.R. Donnelley & Sons Co. v. Marino*,
  505 F. Supp. 3d 194 (W.D.N.Y. 2020) .................................. 28
*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010) ................................................ 47
*Sanchez v. NLRB*,
  785 F.2d 409 (2nd Cir. 1986) .............................................. 50
*SEC v. Gulf & W. Indus., Inc.*,
  502 F. Supp. 343 (D.D.C. 1980) ..................................... 39, 53
*SEC v. Rajaratnam*,
  622 F.3d 159 (2d Cir. 2010) ................................................ 30
*Seeler v. Trading Port, Inc.*,
  517 F.2d 33 (2d Cir. 1975) ........................................... passim
*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
  208 F.R.D. 273 (N.D. Cal. 2002) ......................................... 29
*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
  490 F.3d 130 (2d Cir. 2007) ........................................ passim
*Sheet Metal Workers Int'l Assoc.*,
  306 NLRB 981 (1992) ....................................................... 49
*Shrader v. CSX Transp.*,
  70 F.3d 255 (2d Cir. 1995) ................................................. 40
*Silverman v. J.R.L. Food Corp.*,
  196 F.3d 334 (2d Cir. 1999) ......................................... 66, 67
*Societe Internationale Pour Participations Industrielles Et
  Commerciales, S. A. v. Rogers*,
  357 U.S. 197 (1958) .................................................... 48, 51

viii

*Sperandeo v. Milk Drivers & Dairy Emp. Loc. Union No. 537*, 334 F.2d
 381 (10th Cir. 1964) ................................................................ 51

*Szabo v. P\*I\*E Nationwide, Inc.*,
 878 F.2d 207 (7th Cir. 1989) .................................................. 38

*Talley v. U.S. Postal Serv.*,
 720 F.2d 505 (8th Cir. 1983) .................................................. 63

*Telecommunications Research & Action Ctr. v. FCC*,
 *(TRAC)*, 750 F.2d 70 (D.C. Cir. 1984) .................................... 57

*Thunder Basin Coal Co. v. Reich*,
 510 U.S. 200 (1994) ............................................................... 57

*Time Warner Cable of N.Y.C., LLC v. IBEW, Local 3*,
 170 F. Supp. 3d 392 (E.D.N.Y. 2016) ...................................... 62

*Travelers Indem. Co. v. Metro. Life Ins. Co.*,
 228 F.R.D. 111 (D. Conn. 2005) .............................................. 32

*U.S. v. Electro-Voice, Inc.*,
 879 F. Supp. 919 (N.D. Ind. 1995) .................................... 13, 14

*United Nurses Ass'ns of Cal. / Union of Health Care Pros. v. NLRB*,
 871 F.3d 767 (9th Cir. 2017) ............................................ 24, 26

*United States v. Campo*,
 140 F.3d 415 (2d Cir. 1998) ................................................... 71

*United States v. Cunan*,
 156 F.3d 110 (1st Cir. 1998) .................................................. 61

*United States v. Donziger*,
 38 F.4th 290 (2d Cir. 2022) .................................................... 60

*United States v. Int'l Bus. Machs. Corp.*,
 83 F.R.D. 97 (S.D.N.Y. 1979) ................................................ 33

*United States v. Johnson*,
 850 F.3d 515 (2d Cir. 2017) ................................................... 73

*United States v. Nixon*,
 418 U.S. 683 (1974) ............................................................... 59

*United States v. Robin*,
 553 F.2d 8 (2d Cir. 1977) (per curiam ................................... 70

*United States v. White*,
 237 F.3d 170 (2d Cir. 2001) ..................................................... 5

*Va. Dep't of Corrs. v. Jordan*,
 921 F.3d 180 (4th Cir. 2019) ............................................ 31, 32

*Veritas Health Servs., Inc. v. NLRB*,
 671 F.3d 1267 (D.C. Cir. 2012) ........................................ 24, 25

ix

*Wellness Int'l Network, Ltd. v. Sharif,*
  575 U.S. 665 (2015) ..................................................................62
*Wright Elec., Inc.,*
  327 NLRB 1194 (1999) ...........................................................25
*Wright Elec., Inc. v. NLRB*
  200 F.3d 1162 (8th Cir. 2000)................................................25
*Youngstown Sheet & Tube Co. v. Sawyer,*
  343 U.S. 579 (1952)................................................................58

## Statutes                                                    Page(s)

28 U.S.C. § 1292(a)(1) ...................................................................1
28 U.S.C. § 1292(b) .....................................................................17
28 U.S.C. § 1651 ..........................................................................18
29 U.S.C. § 110 ..............................................................................1
29 U.S.C. § 151 ..............................................................................5
29 U.S.C. § 153(a), (b), (d) .........................................................49
29 U.S.C. § 153(d) ..................................................................49, 59
29 U.S.C. § 157..............................................................................5
29 U.S.C. § 158(a)(1) ..................................................................16
29 U.S.C. § 158(a)(1), (4) ...........................................................15
29 U.S.C. § 160(a) ...............................................48, 50, 55, 59
29 U.S.C. § 160(a), (b) ..........................................................48, 50
29 U.S.C. § 160(c).................................................................55, 60
29 U.S.C. § 160(e) .......................................................................57
29 U.S.C. § 160(e), (f) .................................................................55
29 U.S.C. § 160(j) ..........................................................................1

## Rules                                                       Page(s)

Fed. R. App. P. 4(a)(2) ...........................................................1, 20
Fed. R. Civ. P. 26 ..................................................................17, 35
Fed. R. Civ. P. 26(b)(1) .........................................................27, 29
Fed. R. Civ. P. 26(b)(2)(C) ....................................................30, 32
Fed. R. Civ. P. 34(a)....................................................................46
Fed. R. Civ. P. 45 ...................................................................*passim*
Fed. R. Civ. P. 37 ...................................................................*passim*
Fed. R. Evid. 401........................................................................36

x

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction in the matter under appeal pursuant to 29 U.S.C. § 160(j) (Section 10(j)). That statute provides jurisdiction to hear petitions brought by the National Labor Relations Board (NLRB, Board, or Agency) for temporary injunctive relief when, as here, an administrative complaint alleges an employer has engaged in unfair labor practices. The district court conditionally dismissed Appellant's petition for an injunction on August 23, 2023, and issued its final dismissal order on August 24, 2023. Appellant timely filed her notice of appeal on August 23, 2023.[1]

This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1) and 29 U.S.C. § 110.

## STATEMENT OF ISSUES

1.  The district court permitted expedited discovery and ordered compliance with nonparty document subpoenas inquiring into matters protected by confidentiality interests under applicable federal law. But the district court did not apply the standards for expedited or nonparty discovery. It also gave little or no weight to the subpoenas' impact upon

---

[1] *See* Fed. R. App. P. 4(a)(2); *see also* Statement of the Case, below.

federally protected rights and the public interest. The district court then refused to reconsider its decisions when subsequent facts and further authority, including an order of this Court, cast significant doubts on the propriety of the subpoenas and its discovery determinations. Did these actions by the district court exceed its discretion?

2.    The district court dismissed the Regional Director's petition for injunctive relief as a discovery sanction after nonparties failed to comply with Rule 45 subpoenas that those nonparties assert violated their statutory rights. Even though the Director had no possession, custody, or control over the subpoenaed matter, the district court relied on Rule 37 of the Federal Rules of Civil Procedure and its equitable powers to dismiss the petition. Under these circumstances, was the district court's dismissal order permissible?

3.    The district court attempted to control the prosecution—and ultimately, the outcome—of a separate administrative proceeding, "the *Guess?*[2] proceeding," which is initially under the exclusive authority of the Executive Branch. Specifically, the district court threatened to

---

[2] 339 NLRB 432 (2003).

withhold adjudication of the Section 10(j) case unless the agency terminated the *Guess?* proceeding. Was the district court's action consistent with the constitutional doctrine of separation of powers and statutory limits on its subject-matter jurisdiction?

4.      The record contains ample evidence of reasonable cause to believe an unfair labor practice occurred and that the Director's proposed remedy was just and proper. Should this Court order the requested injunctive relief be granted? And considering that the district judge questioned the legitimacy and fairness of Board proceedings, on remand, should the Court reassign the case to preserve the appearance of justice?

## STANDARD OF REVIEW

In most cases, a district court's determination of whether preliminary relief is just and proper under Section 10(j) is reviewed for abuse of discretion.[3] However, any conclusions of law by the district court in such a proceeding are reviewed *de novo*.[4]

---

[3] *Hoffman v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 364 (2d Cir. 2001).

[4] *Id.*

To the extent the district court's dismissal of the 10(j) Petition here was based upon its discovery rulings, including on the motions to quash subpoenas, such rulings are reviewed for abuse of discretion.[5] Rule 37 sanctions for noncompliance with discovery orders, dismissal of an action as a sanction under the court's inherent power, and denial of reconsideration are also reviewed for abuse of discretion.[6] A district court abuses its discretion "when (1) its decision rests on an error of law or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions."[7]

However, to the extent that the dismissal of the Section 10(j) petition was based upon the lower court's mistaken assertion of subject-

---

[5] *Goetz v. Crosson*, 41 F.3d 800, 805 (2d Cir. 1994).

[6] *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 734 (2d Cir. 1987) (Rule 37 sanctions)*; Chambers v. NASCO, Inc.*, 501 U.S. 32, 54 (1991) (dismissal under inherent power); *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (denial of reconsideration).

[7] *Amer. Sav. Bank, FSB v. UBS PaineWebber, Inc.* (*In re Fitch, Inc.*), 330 F.3d 104, 108 (2d Cir. 2003) (cleaned up).

matter jurisdiction over an entirely separate administrative proceeding, such issues are reviewed *de novo*.[8]

## STATEMENT OF THE CASE

Section 7 of the National Labor Relations Act (NLRA or Act), 29 U.S.C. § 151, *et seq.*, protects employees' rights "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection," and the right to refrain from such activities.[9] As the Supreme Court has found, "the central purpose of the Act" is "achievement and maintenance of workers' self-organization."[10] These public rights are protected "as an instrument of national labor policy."[11] This case revolves around the protection of Section 7 rights, both in the underlying case, and in the events that occurred during the 10(j) litigation.

---

[8] *United States v. White*, 237 F.3d 170, 172 (2d Cir. 2001).

[9] 29 U.S.C. § 157.

[10] *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 193 (1941).

[11] *Emporium Capwell Co. v. W. Addition Cmty. Org.*, 420 U.S. 50, 62 (1975).

I.    **A nationwide organizing campaign begins at a Starbucks in Buffalo, New York; the NLRB holds an administrative unfair labor practice hearing.**

Buffalo-area Starbucks employees began organizing with Workers United (the Union) in 2021. The Union made that organizing public on August 23, 2021, by posting a letter to Starbucks's then-president and chief executive officer Kevin Johnson on social media.[12] On August 30, 2021, the Union filed an election petition with the Agency's Regional office in Buffalo (Region 3) to be the exclusive bargaining representative of Starbucks's employees at its facility in Hamburg, a Buffalo suburb.[13] This was the first Starbucks location at which employees filed an election petition; hundreds of other petitions across the country have followed.

Shortly thereafter, Starbucks's "response to the organizing campaign was swift, massive, and unprecedented."[14] It included "blitz[ing] the Buffalo market" with high-ranking corporate officials who visited the stores, solicited grievances, and scheduled "listening

---

[12] A171–73. "A" refers to the Appendix and "SA" refers to the Special Appendix.

[13] A173.

[14] A174.

sessions" at which officials made threats and other coercive statements.[15] Corporate officials instructed managers to change schedules so that there was a "constant managerial presence" to discourage union discussions.[16] At the end of September, Starbucks permanently closed the Galleria kiosk store, and later that winter, fired seven union activists from several other Buffalo-area stores.[17] Nevertheless, elections were held at several stores between December 2021 and July 2022.[18] The Union won elections at Elmwood, Genesse Street, Sheridan & Bailey, Transit & French, Delaware & Chippewa, Monroe Avenue, East Robinson, and Transit Commons, but lost at the Camp Road store.[19]

The Union filed numerous unfair-labor-practice ("ULP") charges alleging that Starbucks engaged in unlawful conduct under the Act, during the organizing of Buffalo-area stores, both before and after the

---

[15] A174–75, A180–81, A183–84, A313.

[16] A174, A176, A176 n.47, A186, A228–30, 340–41.

[17] A195–97, A202–03, A237–39, A243–46, A251, A254–55, A260–62, A268, A274.

[18] A173.

[19] A173, A224–25, A339–40.

elections.[20] The Director consolidated numerous charges covering nearly 300 unfair-labor-practice allegations at different Buffalo-area stores into a complaint in NLRB Case 03-CA-285671 *et seq*.[21] A hearing before an administrative law judge (ALJ) took place between July 11, 2022,[22] and September 14, 2022.[23]

On March 1, 2023, ALJ Michael Rosas issued a decision.[24] ALJ Rosas found, among other violations, that Starbucks had discriminatorily terminated the seven employees, made unlawful statements, and unlawfully closed stores in violation of the Act for which he granted nationwide relief.[25] That decision is now before the Board for review.

---

[20] A155.

[21] A155, A374.

[22] A155. All subsequent dates are in 2022, unless otherwise noted.

[23] The ALJ permitted the parties to present "just and proper evidence" regarding the appropriateness of 10(j) relief. A375; *see also* Board Order, *Starbucks Corp.*, No. 03-CA-285671 (Aug. 4, 2022), https://www.nlrb.gov/case/03-CA-285671 (finding ALJ's decision to permit just and proper evidence was not an abuse of discretion).

[24] A357.

[25] ECF 92-2.

## II. The Director petitions for injunctive relief against Starbucks.

### A. *This case is filed, and the district court grants Starbucks's request for expedited discovery.*

On June 21, between issuing the administrative complaint and opening the administrative hearing, the Director petitioned the district court for interim injunctive relief under Section 10(j) of the Act, pending a final agency decision.[26] The Director sought a nationwide cease-and-desist order, and an affirmative order requiring Starbucks to, among other things: (1) offer reinstatement to seven discharged employees, (2) recognize and bargain in good faith with the Union at the Camp Road store via an interim bargaining order,[27] and (3) read and post the district court's order nationwide.[28]

First, the district court rejected the Director's request that 10(j) relief be decided based on affidavits and exhibits (i.e., without an evidentiary hearing), and allowed discovery.[29] Then, upon the parties' claim of prejudice from the temporal overlap between 10(j) discovery

---

[26] A017–61, A372–73.

[27] *See NLRB v. Gissel Packing Co.*, 395 U.S. 575, 610 (1969).

[28] A056–59.

[29] SA001–05.

and the administrative proceedings, the district court stayed the 10(j) matter until after the administrative record closed.[30]

### B. *Starbucks issues subpoenas to nonparties asking for documents related to the Union's organizing; the NLRB and Union object.*

After the Agency's administrative hearing closed, discovery ensued in the 10(j) proceeding.[31] Starbucks issued subpoenas to the Union's custodian of records, two non-Starbucks union employees, and 19 former and current Starbucks employees, each of whom had provided testimony for the Regional Director on behalf of the NLRB's General Counsel in the ALJ hearing, including "just and proper" testimony, subject to cross-examination by Starbucks.[32]

The sheer breadth of the subpoenas was remarkable. They sought information about: the number of employees supporting or opposing the Union in upcoming elections and at stores that had not petitioned for elections,[33] employees who changed their minds on voting and their

---

[30] ECF 29. All "ECF" citations are to the district court docket below.

[31] SA006–07; *see also* ECF 34, 38.

[32] A078–79, A086, A094, A096, A373, A375; *see also* ECF 44 at 7 n.3, 7–8.

[33] ECF 42 at 10 (Subpoena Requests 1(a) and 1(c)).

10

reasoning,[34] fluctuations in union support,[35] and discussions of reasons other than retaliation that employees opposed the Union.[36] They also sought information on the Union's media strategy, particularly involving discipline and terminations at the Buffalo-area stores.[37] The subpoenas further requested "[a]ll Documents relating to changes to the timing of filing election petitions" based on the Complaint, unfair labor practice charges, "or any other factor."[38] The subpoenas were not limited to the Buffalo stores, but sought information about organizing nationally. The subpoenas requested statements by employees and former employees outside Buffalo showing support for or opposition to the Union,[39] and all emails from sbworkersunited@gmail.com "sent since August 2021 by any Starbucks employee that reflects interest in starting a union campaign at any Starbucks store" or otherwise participating in union activity, plus any email showing "support for the

---

[34] ECF 42 at 10–11 (Subpoena Requests 1(b) and 1(d)).

[35] ECF 42 at 18 (Subpoena Request 13).

[36] ECF 42 at 20 (Subpoena Request 17).

[37] ECF 42 at 12–13 (Subpoena Requests 3, 4, and 5).

[38] ECF 43 at 18 (Union Subpoena Request 15).

[39] ECF 42 at 11 (Subpoena Request 1(f)).

Union and/or fear of retaliation for engaging in union activities."[40] Notably, while the subpoena instructions permit redaction of individual employee names, they contain multiple contradictory exceptions that permit Starbucks access to the opinions of individual employees.[41]

The Union and the Director each filed motions to quash the subpoenas.[42] Although the Director acknowledged that in some circumstances limited discovery may be available in 10(j) proceedings, she argued that discovery was inappropriate in this particular case.[43] This was because the 10(j) petition was supported by affidavits submitted by the Director and the entire administrative record, which

---

[40] ECF 42 at 20 (Subpoena Request 16).

[41] The instruction states, in part: "To ensure that the requests that follow are not construed to have the purpose or effect of interfering with, restraining or coercing employees in the exercise of their rights under Section 7 of [the NLRA], please redact from responsive Documents the name of any Starbucks hourly employee[.]" ECF 46 at 6 n.2. But the paragraph goes on to *exclude* from that protection the names of particular individuals who provided affidavits and/or were witnesses in the underlying ULP hearing. *Id.* Among additional exceptions, it further excepts from redaction documents that "reflect[] or could be construed to reflect matters that effected [sic] the employee's interest, one way or the other, in union organizing or union representation." *Id.*

[42] *See* ECF 42–44.

[43] ECF 44 at 5–7.

included examination and cross-examination of witnesses on evidence relevant to the need for injunctive relief.[44] The Director additionally maintained that subpoenas issued to individual employee witnesses were inherently coercive, overly broad, and unduly burdensome, especially as served upon nonparties to the case.[45] Finally, the Director argued that Starbucks had received the entire evidentiary basis for the 10(j) request in the administrative hearing.[46] Thus, the Director argued that discovery would be duplicative, excessive, and unnecessary.[47]

> C. *The district court requires the nonparties to produce confidential communications arguably protected by Section 7; the subpoena recipients refuse to comply and seek mandamus.*

On September 23, the district court denied in relevant part the motions to quash, rejecting "blanket claims of privilege to entire topics."[48] Although it acknowledged that a court "may limit discovery to avoid delay in this action's resolution,"[49] it noted, in response to the

---

[44] *Id.* at 7, 15–16.

[45] *Id.* at 8, 10, 12, 16–18, 21,

[46] *Id.* at 15–16.

[47] *Id.* at 17–18.

[48] SA008–16.

[49] SA010 (citing *U.S. v. Electro-Voice, Inc.*, 879 F. Supp. 919, 923 (N.D. Ind. 1995)).

Union's argument, that the Second Circuit does not recognize a union-employee privilege.[50] The district court concluded that it had "balanced Respondent's need for the requested documents with Petitioner's need to proceed expeditiously (and the burden of subpoena compliance generally), in the context of the interim relief requested in this 10(j) proceeding."[51] The Union moved to reconsider,[52] which the court denied without addressing the asserted NLRA confidentiality interest, again discussing only a "union-employee privilege."[53] The district court then turned to the specific requests in the subpoena. It found numerous subpoena requests proper.[54] It modified one request,[55] and quashed certain other requests.[56]

The subpoenaed nonparties refused to turn over documents required by the discovery order's October 14 deadline.[57] In response,

---

[50] *Id.*

[51] SA011.

[52] ECF 53.

[53] SA017–22.

[54] SA013–15.

[55] SA013; ECF 42 at 11 (Subpoena Request 1(f)).

[56] SA011–13.

[57] SA015.

14

Starbucks filed a motion for contempt and sanctions against all nonparties.[58] The district court held that motion in abeyance upon the Union's announced intent to file a mandamus petition.[59] On December 28, the Union and employees filed a petition for writ of mandamus with this Court in Case 22-3229.[60]

> D. *The Union alleges that Starbucks's subpoenas violate the NLRA and Region 3 issues the* Guess? *unfair-labor-practice complaint; an Agency ALJ finds nearly all of the subpoena requests unlawful.*

After the district court's September 23 discovery order, the Union filed an unfair-labor-practice charge in NLRB Case 03-CA-304675, alleging that Starbucks's subpoenas in the 10(j) proceeding violated Section 8(a)(1) and (4) of the Act ("the *Guess?* proceeding").[61] On December 15, the Director issued an unfair-labor-practice complaint on that charge, which ALJ Charles Muhl considered on a stipulated record.[62]

---

[58] ECF 59.

[59] ECF 64.

[60] ECF 81.

[61] 29 U.S.C. § 158(a)(1), (4); *see also* A373.

[62] *See* ECF 71-1; A373 n.3.

On May 12, 2023, ALJ Muhl issued a decision in the *Guess?* case, finding, among other things, that Starbucks had violated Section 8(a)(1) of the Act[63] by its subpoena requests in this 10(j) litigation.[64] ALJ Muhl found that most of Starbucks's "extensive" document requests "sought information that could be used to determine the identities of union supporters (and detractors), their union activities, and the Union's organizing strategy."[65] Applying *Guess?*, ALJ Muhl concluded that most of the document requests sought information that was irrelevant to the 10(j) case, or sought employee confidential information protected by Board and court law, and that those employee confidentiality interests outweighed Starbucks's right to the information.[66] The ALJ further concluded that only paragraphs 1(a) and 1(c) of the document requests, which sought numbers reflecting union support but not employee names, were lawful because they sought information relevant to the "just and proper" analysis under Section 10(j) and do not infringe on

---

[63] Section 8(a)(1) makes it an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]." 29 U.S.C. § 158(a)(1).

[64] ECF 102-1; A372–96.

[65] A373.

[66] A373, A383–84.

16

protected employee confidentiality.[67] This decision is also now before

the Board for review, and the General Counsel filed a motion to

expedite the Board's decision given the pending 10(j) proceedings.[68]

> *E. The NLRB renews its motion to quash the subpoenas, alternatively seeking reconsideration or certification of an interlocutory appeal, and then seeks an extraordinary writ from this Court.*

On December 22, the Director filed a renewed motion to quash

Starbucks's subpoenas in the district court arguing that: the General

Counsel's prosecutorial determination to issue complaint in the *Guess?*

case should weigh in favor of quashing the subpoenas, Federal Rules of

Civil Procedure 26 and 45 require balancing nonparties' confidentiality

interests and the specialized concerns under Section 7 against the needs

of discovery, and that the subpoenas constitute an unlawful use of court

discovery under *Guess?*.[69] The Director alternatively sought Rule 60(b)

reconsideration or certification of an interlocutory appeal under 28

U.S.C. § 1292(b).[70]

---

[67] A373, A384–85.

[68] ECF 122 at 8.

[69] ECF 79-1.

[70] *Id.*

On January 25, 2023, the district court denied that motion and refused to certify an appeal, finding it had already balanced the required interests in discovery.[71] On January 27, 2023, the NLRB filed a petition for writ of injunction with this Court in Case 23-120 under the All Writs Act,[72] requesting an order requiring Starbucks to withdraw its subpoenas.[73]

> **F. An employee petitions to decertify the Union at one of the stores involved in the 10(j) case; after this Court denies the writ petitions, the Director and Union seek reconsideration based on new developments; the district court dismisses the 10(j) petition.**

Separate from these proceedings, on April 28, 2023, an employee at the Delaware & Chippewa store filed a petition to decertify the Union as collective-bargaining representative at that store.[74] The petition was eventually dismissed by the Director.[75]

On May 9, 2023, this Court denied the pending petitions for extraordinary writs, concluding that "the subpoenaed nonparties have

---

[71] SA023–25.

[72] 28 U.S.C. § 1651.

[73] ECF 90-1.

[74] A397.

[75] Decision and Order Dismissing Petition, *Starbucks Corp.*, Case 03-RD-316974 (May 25, 2023), https://www.nlrb.gov/case/03-RD-316974. Starbucks requested Board review of the Director's Order.

18

an adequate, alternative means of obtaining relief because they can appeal either a civil or criminal contempt sanction if they refuse to comply with the subpoenas."[76] The Court further observed that "[a]dditionally, in light of the recent decision of [ALJ Rosas] finding that Starbucks violated § 8 of the National Labor Relations Act, it would be more appropriate for Petitioners to seek reconsideration of the district court's discovery order, which may be subject to material alteration as a result of the administrative factual findings and legal conclusions."[77]

The district court requested briefs on further steps following denial of the Union and Board's writ petitions.[78] On June 16, 2023, the Union requested reconsideration of the court's discovery determinations.[79] On the same day, the Director moved to continue the stay pending Board action in the *Guess?* case, or alternatively, to reconsider the court's discovery rulings.[80] Starbucks filed a

---

[76] ECF 100-1 at 2.

[77] *Id.*

[78] ECF 104.

[79] ECF 108.

[80] ECF 106.

counterclaim[81] and motion to lift the stay as to its sanctions motion, or alternatively, dismiss the pending 10(j) petition.[82]

After briefing and argument on all the pending motions, the district court issued a conditional dismissal order on August 23, 2023, dismissing the Director's injunction petition unless she, among other things, certified "termination" of the *Guess?* proceeding.[83] The same day, the Director certified that she would not accede to the court's demand because, among other things, she had no authority to do so.[84] She also filed her notice of appeal,[85] which became effective August 24, 2023, when the district court issued its final dismissal order.[86]

## SUMMARY OF ARGUMENT

The district court's dismissal order is built upon layers of legal error and misapplications of law to fact. Starbucks's subpoenas were impermissible under the Federal Rules of Civil Procedure and found to

---

[81] ECF 107.

[82] ECF 109.

[83] SA026–36.

[84] ECF 134; A511–14.

[85] SA038–39.

[86] Fed. R. App. P. 4(a)(2).

be almost entirely unlawful under the NLRA by an agency ALJ. But the court refused to reconsider its rulings in the face of developments and authority that necessitated a change in course. The court then compounded its errors by dismissing the Director's case because she refused to "terminate" an agency proceeding involving the subpoenas, even though she had no authority to do so.

First, the district court misapplied the rules for discovery. It discounted the federally protected confidentiality interest of employees in NLRA-protected activity in a manner that would severely compromise those protections. And it failed to properly apply the limited scope of expedited discovery available in preliminary injunction cases. But under any discovery standard, the subpoenas as enforced by the district court were improper; they were unduly burdensome to nonparties, failed to take account of the public interest, and would not produce information supporting a viable defense.

Next, although the Director presented the district court with significant legal authorities and factual developments showing a compelling need for reconsideration of its discovery orders, the district court refused to do so.

21

Third, neither the Federal Rules of Civil Procedure, nor any other powers, gave the district court authority to impose dispositive sanctions on the Director based on the conduct of nonparties. Rule 37 of the Federal Rules of Civil Procedure is limited by its terms to the conduct of parties. Here, the Director has no possession, custody, or control over the subpoenaed materials. Under these circumstances, Rule 45 provides the sole means to obtain compliance with a nonparty subpoena.

Fourth, the district court's equitable or inherent powers do not extend to places already comprehensively covered by the Federal Rules. And even if Rule 37 applied, the sanction of dismissal would not be available here.

Fifth, the district court unconstitutionally exceeded its proper judicial role in seeking to control an agency unfair-labor-practice proceeding. Neither Board decisions, nor the prosecutorial acts of its General Counsel, are subject to review by district courts. And because review of final Board orders is assigned exclusively to the courts of appeals, interference with non-final Board action improperly interferes with those courts' congressionally-assigned jurisdiction to enforce or modify final Board orders. The district court's attempt to turn the

NLRB into its adjunct, in service of obtaining compliance with its own subpoenas, was an impermissible exercise of judicial authority.

Because events have overtaken the need for further fact-finding here, the case should be remanded with instructions to grant the requested injunctive relief based on the existing record. We further note that the district court below has demonstrated an evident hostility towards the positions of the agency and its proceedings. Accordingly, assignment to a different judge would best advance the appearance of justice in any proceedings on remand.

## **ARGUMENT**

### I.   **The district court erred by failing to apply the proper standards for expedited and nonparty discovery and refusing to consider statutory confidentiality interests.**

"A motion to a court's discretion is a motion not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles."[87] Because the district court ignored important legal principles and grossly misweighed the harms of discovery relative to its value to the case, it abused its discretion and committed reversible error.

---

[87] *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139 (2005).

*A. The NLRA creates confidentiality interests in labor activity; discovery determinations must consider these interests and the public interest.*

Sections 7 and 8 of the NLRA protect an employee's right to engage in organizing activity free from interference, restraint, or coercion. The Board has found, and two circuit courts have agreed, that it is "well settled" that the Act "gives employees the right to keep confidential their union activities*"* from discovery.[88] The right to engage in protected activity is not viable "in a vacuum"; the Act therefore protects employees' right to freely communicate with their coworkers and others about work-related concerns.[89] Employees and unions have a right to maintain the confidentiality of the identity of union supporters, the content of their discussions, and the locations at which organizing is nascent.

There are two core reasons for this. First, if an employer were to come into possession of organizing information, it could be used to identify union-supporting employees and retaliate against them by, e.g.,

---

[88] *United Nurses Ass'ns of Cal./Union of Health Care Pros. v. NLRB*, 871 F.3d 767, 785 (9th Cir. 2017) (quoting *Veritas Health Servs., Inc. v. NLRB*, 671 F.3d 1267, 1274 (D.C. Cir. 2012) (Kavanaugh, J.)).

[89] *Cent. Hardware Co. v. NLRB*, 407 U.S. 539, 542–43 (1972); *accord Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 491–92 (1978).

threatening and firing them, or to identify "hot shops" at which illegal acts like preemptive closure, surveillance, or promises of benefits would effectively nip organizing in the bud. "The Board zealously seeks to protect the confidentiality interests of employees because of the possibility of intimidation by employers who obtain the identities of employees engaged in organizing."[90] Indeed, courts have recognized that a "right to privacy" is "necessary to full and free exercise of the organizational rights guaranteed by the [Act]."[91]

But even absent retaliation, attempts to unearth such activity are harmful in and of themselves: "The inevitable result of the availability of this information would be to chill the right of employees to express their favorable union sentiments."[92] Indeed, "the very request itself [] would have a chilling effect on employees' willingness to engage in (or

---

[90] *Wright Elec., Inc.*, 327 NLRB 1194, 1195 (1999) *enforced,* 200 F.3d 1162 (8th Cir. 2000) (citing *Nat'l Tel. Directory Corp.*, 319 NLRB 420, 421 (1995)).

[91] *Pac. Molasses Co. v. NLRB*, 577 F.2d 1172, 1182 (5th Cir. 1978); *see also Veritas Health*, 671 F.3d at 1274 ("Section 7 of the Act gives employees the right to keep confidential their union activities" (quoting *Guess?, Inc.*, 339 NLRB at 434)).

[92] *Chino Valley Med. Ctr.*, 362 NLRB 283 (2015).

25

refrain from) protected activities."[93] As the Supreme Court has noted, employers "by virtue of the employment relationship, may exercise intense leverage."[94] This Court has similarly considered the "deterrent effect" of discovery on the protected activities of journalists and their confidential sources.[95]

The Board has thus held that, under certain circumstances, court discovery may violate the Act, applying the standard set forth in *Guess?, Inc.*[96] Under *Guess?*, the Board applies a three-part test to determine whether a party's discovery or questioning in civil litigation violates Section 8(a)(1): (1) the questioning must be relevant; (2) the questioning must not have an illegal objective; (3) if the questioning is relevant and does not have an illegal objective, the employer's interest in obtaining the information must outweigh employees' confidentiality interests under Section 7.[97] Here, nonparty employees and the Union

---

[93] *United Nurses*, 871 F.3d at 785 (quotation omitted).

[94] *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 240 (1978) (withholding employee affidavits under FOIA).

[95] *Baker v. F & F Inv.*, 470 F.2d 778, 782 (2d Cir. 1972).

[96] 339 NLRB 432 (2003).

[97] *Id.* at 434.

have charged, and an agency ALJ has agreed, that the discovery requests propounded by Starbucks are almost all unlawful.[98]

As more fully explained below in Section V-A, only the Board may adjudicate an unfair-labor-practice case. But federal courts must give effect to the Act when adjudicating a case under their separate jurisdiction.[99] And as explained in Section I-D, an invasion of confidentiality interests arising from other sources of law is a burden courts are required to consider in managing discovery. Here, the district court persistently and erroneously refused to consider NLRA confidentiality interests in the court's discovery determinations.

   B. *The proponent of expedited discovery bears the burden of showing that its requests are reasonable and supported by good cause; Starbucks's requests met neither requirement.*

The general scope of discovery in federal court encompasses "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[100] But in preliminary-injunction cases, the relatively liberal standard of Rule 26(b)(1) does not

---

[98] ECF 102-1.

[99] *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83-85 (1982).

[100] Fed. R. Civ. P. 26(b)(1).

apply—only limited expedited discovery is available on motion of a party. The burden is on the movant to show, at a minimum, that its requests are "reasonable" and supported by "good cause."[101] A court should also examine "burdens associated with the expedited discovery in comparison to the potential injury to the moving party in the absence of expedited discovery."[102] Notably, expedited discovery "is not the norm,"[103] and "should be granted only in exceptional instances."[104] Such requests must be "narrowly tailored" to the purpose of the request, and seek "specific, limited, and identifiable pieces of information."[105] "Courts generally deny motions for expedited discovery when the movant's discovery requests are overly broad."[106]

For example, discovery was not narrowly tailored to obtain information relevant to a preliminary injunction determination where

---

[101] *R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 210 (W.D.N.Y. 2020).

[102] *Id.*

[103] *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000).

[104] *Mullane v. Almon*, 339 F.R.D. 659, 663 (N.D. Fla. 2021).

[105] *Id.*

[106] *Irish Lesbian & Gay Org. v. Giuliani*, 918 F. Supp. 728, 730-31 (S.D.N.Y. 1996).

the requests covered "a broad range of business practices before and after [individuals] joined the company."[107] Conversely, expedited answers to fourteen interrogatories which simply asked for "yes" or "no" answers were appropriate.[108] And discovery requests were narrowly tailored where a party representative was not subjected to a free-ranging deposition.[109]

Starbucks's open-ended requests fail to meet any of these standards (and would likewise fail even under the more permissive standard of Rule 26(b)(1)). They are not narrowly tailored, nor do they seek specific identifiable information—indeed, they are grossly disproportionate to any conceivable need here, amounting to a sweeping fishing expedition into the Union's confidential organizing strategy and communications with employees.[110]

The district court at no point reckoned with the standards for expedited discovery. Its orders instead appear to apply ordinary

---

[107] *Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005).

[108] *Dorrah v. United States*, 282 F.R.D. 442, 445-46 (N.D. Iowa 2012).

[109] *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 277 (N.D. Cal. 2002).

[110] *See* notes 33–41 and accompanying text.

discovery standards.[111] That alone would constitute an abuse of discretion, but the court then piled error on top of error by conducting only the most superficial proportionality analysis.[112] This caused it to make three separate mistakes: it failed to properly weigh the burden of discovery on nonparties, it gave short shrift to the public interest in protecting organizing drives against employer surveillance, and it prioritized discovery of little, if any, probative value over obvious and profound harms to employee rights.

### C. Rule 45 requires a higher showing to support discovery requests that impose burdens on nonparties.

With both parties and nonparties, a district court must "limit the frequency or extent of discovery if it determines that it is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive or where the burden or expense of the proposed discovery outweighs its likely benefit."[113] But "[n]on-parties have a different set of expectations" in

---

[111] *See, e.g.*, SA0010–14, SA0026–36.

[112] SA002.

[113] *SEC v. Rajaratnam*, 622 F.3d 159, 181 (2d Cir. 2010) (citing Fed. R. Civ. P. 26(b)(2)(C)).

discovery.[114] "[C]ourts must give [a Rule 45 subpoena] recipient's nonparty status special weight, leading to an even more demanding and sensitive inquiry than the one governing discovery generally."[115]

Upon motion, a court "must" quash or modify a subpoena to a nonparty that "requires disclosure of privileged or *other protected matter*," or "subjects a person to undue burden."[116] And "protected matter" is not limited to evidentiary privileges.[117] Rule 45 thus imposes the nondiscretionary duty to quash subpoenas which demand "protected matter."[118]

Courts must also quash subpoenas that impose an undue burden on nonparties. "Undue burden" on a nonparty tests "such factors as

---

[114] *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).

[115] *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (quotation marks omitted).

[116] Fed. R. Civ. P. 45 (d)(3)(A)(iii), (iv) (emphasis added).

[117] The Section 7 confidentiality interest asserted by the Board here is a wholly distinct concept from the evidentiary "union-employee privilege," *see, e.g., Hernandez v. Office of the Comm'r of Baseball*, 331 F.R.D. 474, 477 (S.D.N.Y. 2019), which the district court persistently conflated. *See, e.g.*, SA018.

[118] *See Jordan*, 921 F.3d at 192 (recognizing state law confidentiality interest in identity of suppliers of execution drugs); *Cusumano*, 162 F.3d at 717 (finding First Amendment-protected confidentiality interest of journalists and academic researchers in their investigative records).

relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed."[119] And "invading privacy or confidentiality interests" undoubtedly constitutes a cognizable burden.[120]

Here, the subpoenas first fail the test of Rule 26(b)(2)(C), which protects parties and nonparties alike, because the information sought was available from a more convenient, less burdensome source. Starbucks had an unfettered opportunity to examine "just and proper" questions, including about disaffection from the Union and chill of Section 7 rights, directly from employees throughout the NLRB administrative hearing.[121] What's more, the record reflects Starbucks availed itself of that opportunity to great effect on the exact issues it presents as a basis to justify its overbroad document requests. There's no dispute, for example, that news of firings was shared with media

---

[119] *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005).

[120] *Jordan*, 921 F.3d at 184.

[121] *See generally* A068–153 (*passim*).

32

outlets and posted online.[122] Starbucks also elicited testimony about
employees posting extensively on social media and about Starbucks's
anti-union campaign and discharges.[123] It is difficult to imagine what
else Starbucks would need to establish its defense that employees and
the Union themselves spread news of Starbucks's conduct.

When determining if Starbucks's cumulative requests were
unduly burdensome on the nonparties, the district court was required to
consider the "size of and resources available" to them."[124] Here, the
subpoenas would impose extraordinarily burdensome responsibilities on
19 individual employees to collect and redact potentially thousands of
documents. And as discussed in Section I-A above, this sort of
weaponized, punitive discovery has the predictable effect of creating
disaffection with the Union and discouraging initiating or cooperating

---

[122] A080–81 (eliciting testimony that employee shared the recording of
their termination meeting with media outlets which in turn posted
them online).

[123] A081–82, A097–101, A126, A134–36.

[124] *United States v. Int'l Bus. Machs. Corp.*, 83 F.R.D. 97, 108 (S.D.N.Y.
1979).

with the NLRB investigations and proceedings. This constitutes both
"undue burden" and "oppression" under Rule 45.[125]

   D. *The district court failed to consider public interests.*

   Where discovery seeks protected information, the court should
consider the impact of the requests on public interests, including the
NLRA rights of employees, when deciding the scope of permissible
discovery.

   In the Fifth Circuit case of *Cazorla v. Koch Foods of Mississippi,
LLC*, a defendant-employer in a Title VII harassment case sought
discovery from the government and employees related to applications by
employees for "U visas," which are available to individuals cooperating
with certain government agency investigations.[126] The employer
asserted that the employees had made up their accusations in hopes of
securing U visas, and that the EEOC solicited and certified false claims
in order to build a class-based discrimination suit against the
company.[127] The Immigration and Nationality Act and the regulations

---

[125] Fed. R. Civ. P. 45(d)(3)(A)(iv), 26(c).

[126] 838 F.3d 540, 555 (5th Cir. 2016).

[127] *Id.* at 545.

34

enabling the U visa program provided that the requested information was confidential as to requests directed to the government. As to the requests to employees, the Fifth Circuit concluded that the district court "could and should have weighed" the public interests of the visa program and effects on third-party individuals within its Rule 26 analysis.[128] The *Cazorla* court concluded the requested discovery imposed an undue burden, and that the district court, in confining its analysis solely to the parties before it, had "imperil[ed] important public purposes."[129]

Here, the district court made the same mistake, limiting its inquiry solely to the considerations of the perceived need of a party to present a defense. While the court said it "explicitly and implicitly" balanced competing concerns, it did so while at the same time denying the validity of confidentiality interests emanating from the NLRA and continuing to treat the issue as one of "union-employee privilege," which is wholly inapposite.[130] In other words, the district court could not have

---

[128] *Id.* at 562.

[129] *Id.* at 564.

[130] *See* SA024, SA010 n.1 (citing *Hernandez*, 331 F.R.D. at 477).

balanced a consideration while at the same time leaving it off the scale.
This was legal error.

E. *The discovery sought would not support a valid defense.*

A purported reason for many discovery requests, that the Union
may have engineered its own disaffection by publicizing Starbucks's
unlawful conduct, does not amount to "good cause" for expedited
discovery.[131] Indeed, even if this dubious contention could be
established, such a fact fails the baseline relevance standard of being
"of consequence in determining the action."[132] To the contrary, this
suggestion is both inherently implausible and legally irrelevant.
Publicizing the facts of a labor dispute is itself activity protected by the
NLRA.[133] As such, it should not be the basis for a defense in a 10(j)
proceeding. Allowing such a defense would impermissibly second-guess
the media strategy and forms of Section 7 activity employees and their
union engage in or refrain from. "There is no indication that Congress

---

[131] ECF 109 at 26–27.

[132] Fed. R. Evid. 401.

[133] *DirecTV, Inc. v. NLRB*, 837 F.3d 25, 33 (D.C. Cir. 2016).

intended to limit [Section 7's] protection to situations in which . . . employees combine with one another in any particular way."[134]

Although courts have suggested that injunctive relief may be denied where the record reflects improper conduct by a union such as spreading wholly unsubstantiated rumors, no improper conduct occurred here.[135] Days of unfettered witness examination in the administrative proceeding on the question of chill failed to disclose even a whiff of improper conduct causing disaffection from the Union.[136] Rather, the record shows the Union and employees shared facts from their perspective. When faced with an onslaught of illegal employer conduct, a union's choice to stay silent rather than facing the events head-on would likely undermine its credibility and support. But absent wholly improper conduct, the availability of remedies to vindicate the public interest cannot hinge on whether victims of illegal conduct mounted a perfect PR response.

---

[134] *NLRB v. City Disposal Systems, Inc.*, 465 U.S. 822, 835 (1984).

[135] *Arlook ex rel. NLRB v. S. Lichtenberg & Co.*, 952 F.2d 367, 374 (11th Cir. 1992).

[136] *See generally* A068–153; *see also* A381, 386–87.

The recent Sixth Circuit decision in *McKinney v. Starbucks*,[137] cited favorably by the district court,[138] actually undermines the rationale of the conditional dismissal order. There, the circuit court rejected Starbucks's defense that the Union caused its own chill, noting the lack of authority for finding that "a union that informs its members of anti-union activities should be precluded from obtaining temporary injunctive relief."[139] The Sixth Circuit also found no reason that Starbucks's own nationwide dissemination of firings "should not be counted against it."[140]

Cases where a 10(j) remedy was denied because of dissemination of violations by a union or employee, including *Overstreet v. El Paso Elec. Co.,* cited by the district court, also cannot support its decision.[141] First, those holdings centered on the discharge of a *single employee*.[142] In contrast to those cases, the numerous employees here who were

---

[137] 77 F.4th 391, 400 (6th Cir. 2023), *petition for cert. filed* (No. 23-367).

[138] SA027–29.

[139] *McKinney*, 77 F.4th at 400.

[140] *Id.*

[141] SA028–29.

[142] *Overstreet v. El Paso Elec. Co.*, 176 F. App'x 607, 610 (5th Cir. 2006); *Szabo v. P*I*E Nationwide, Inc.*, 878 F.2d 207, 210 (7th Cir. 1989).

terminated, whose store was closed, and who were subjected to "unprecedented incursion" of company officials into their workplaces, did not find out about these events from the Union.[143] Starbucks's own dissemination of firings, and the egregious and widespread nature of its campaign of lawbreaking, demonstrate Starbucks's intent to spread this information amongst its employees.[144]

And to the extent those single-employee cases stand for the proposition that publicizing the facts of a labor dispute from an employee's perspective may forfeit statutory remedies, this Court should reject them. Such defenses are not appropriate here because the Director seeks "to enforce a congressional mandate in the public interest."[145] Section 10(j) remedies act as an instrument of national labor policy rather than a vindication of private rights.[146] Accordingly,

---

[143] A340–41.

[144] A198–99 (Starbucks disseminated information regarding Cassie Fleisher's termination nationwide in its Partner Hub); A340–48 (ALJ Rosas finding nationwide dissemination and hundreds of NLRA violations by Starbucks).

[145] *SEC v. Gulf & W. Indus., Inc.*, 502 F. Supp. 343, 348 (D.D.C. 1980).

[146] *Seeler v. Trading Port, Inc.*, 517 F.2d 33, 39-40 (2d Cir. 1975).

allowing such a defense would not "further the policies of the Act."[147] Where Starbucks's NLRA violations are the "but-for" cause of chill,[148] muzzling employees in the face of egregious wrongdoing may suit its purposes, but is without legal basis.

## II. Denial of reconsideration of the district court's discovery determinations in the face of significant facts and authority—including an order of this Court—was an abuse of discretion.

The district court twice refused to reconsider its discovery determinations despite being presented with additional authority and developments "that might reasonably be expected to alter the conclusion reached by the court."[149]

As noted above in Section I-C, the district court failed to consider the proper standards for expedited nonparty discovery and improperly conflated employees' rights to keep organizing activity confidential with a "union-employee privilege," an entirely separate concept.[150] After that

---

[147] *Hoffman*, 247 F.3d at 368.

[148] *See Kobell v. Suburban Lines*, 731 F.2d 1076, 1088-89 (3d Cir. 1984) (analyzing harm to employee rights from employer misconduct in Section 10(j) case under a "but-for" causation standard).

[149] *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995).

[150] SA018.

decision, further events warranting reconsideration occurred. ALJ Rosas issued his own decision on the merits, in which he found hundreds of violations, including highly coercive "hallmark" violations warranting an affirmative bargaining order at one location.[151] And in denying the Board's subsequent petition for extraordinary relief under the All Writs Act, this Court instructed that "in light of the recent decision of [ALJ Rosas] finding that Starbucks violated § 8 of the National Labor Relations Act, it would be more appropriate for Petitioners to seek reconsideration of the district court's discovery order, which may be subject to material alteration as a result of the administrative factual findings and legal conclusions."[152]

But the district court did not heed this Court's suggestion. Despite being presented with authority holding that an ALJ finding of highly coercive violations will support Section 10(j) relief,[153] the district court refused to consider that authority.[154] The district court also refused to

---

[151] A154–371.

[152] ECF 100-1.

[153] ECF 122 at 2-3 (citing *Seeler v. Trading Port, Inc.*, 517 F.2d 33, 40, n.11 (2d Cir. 1975) and *NLRB v. Jamaica Towing, Inc.*, 632 F.2d 208, 212-13 (2d Cir. 1980)).

[154] *See generally* SA026–36.

41

consider the supervening event of a decertification petition filed by an

employee at one of the stores involved in the case, seeking to oust the

Union as a bargaining representative.[155] This development provided

clear and recent evidence of loss of Union support from the pre-violation

status quo supporting the need for injunctive relief.

Finally, the district court refused to reconsider its discovery

determinations in light of the separate decision of ALJ Muhl in the

*Guess?* case, which found nearly all of the subpoena requests

unlawful.[156] To be sure, this ALJ decision was not binding upon the

district court. But the court's patent refusal to fully consider the legal

principles at stake, including the ways that the subpoenas interfered

with the rights of those not before the court, was outside its discretion.

## III. Neither the Federal Rules, nor any other authority, permitted dismissal of the Director's injunction petition.

The district court dismissed the Director's injunction petition, at

heart, because of nonparties' noncompliance with the subpoenas.

Because the NLRB cannot compel subpoena compliance by nonparties,

---

[155] ECF 122 at 3.

[156] A373; SA026–36.

the district court's imposition of dispositive sanctions under Rule 37(b) was reversible legal error.

### A. Rule 37(b) provides no authority to impose sanctions against the Director based on nonparties' conduct.

The district court below cited Rule 37 of the Federal Rules of Civil Procedure as legal authority for dismissal because of nonparty subpoena noncompliance.[157] "Rule 37, however, does not authorize the [district court] to dismiss [an action] because a non-party is being uncooperative."[158] While this Court has not spoken directly to the issue, the Eighth and Ninth Circuits have found Rule 45 governs such cases, not Rule 37. And a chorus of district courts within and without this circuit have found a nonparty's failure to comply with a Rule 45 subpoena cannot support Rule 37 litigation sanctions.

All appellate courts to consider the question have held that Rule 45 is "the only authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a nonparty for failure to comply with a

---

[157] SA034.

[158] *Mazzocchi v. Windsor Owners Corp.*, No. 11CIV.7913 AT, 2014 WL 594085, at *2 (S.D.N.Y. Feb. 11, 2014).

43

subpoena duces tecum."[159] Thus, the Eighth Circuit held in *Fisher v. Marubeni Cotton* that a district court's reliance on Rule 37 was "misplaced" where it held a nonparty deponent in contempt for failure to produce documents at his deposition.[160] Instead, the *Fisher* court found that the district court's authority "could only come from Rule 45(f)."[161] The Ninth Circuit in *Pennwalt Corp. v. Durand-Wayland, Inc.* similarly held that Rule 37 was "inapplicable" where a court awarded attorney fees against a nonparty who failed to comply with a document subpoena.[162] Various district courts have agreed that "ordinarily . . . a court cannot impose Rule 37 sanctions for failure of a non-party to comply with a Rule 45 subpoena."[163] This is because "Rule 37 applies to a *party's* failure to comply with a discovery order, while Rule 45 addresses a *nonparty's* failure to comply with a discovery subpoena."[164]

---

[159] *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (citing *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1341 (8th Cir. 1975)).

[160] *Fisher*, 526 F.2d at 1341.

[161] *Id.* at 1341

[162] 708 F.2d at 494.

[163] *Markus v. Rozhkov*, 615 B.R. 679, 702 (S.D.N.Y. 2020).

[164] *Madigan v. Bronstein*, No. 18MC61, 2018 WL 1768283, at *2 (S.D.N.Y. Apr. 12, 2018) (emphasis original); *see also Cruz v. Meachum*,

Courts have, in limited circumstances, applied Rule 37(a) and 37
(b)(1) to sanction nonparty *deponents* for failure to appear for deposition
or answer questions.[165] But the only sanction provided by those
provisions, like Rule 45(g), is contempt against the person commanded
to testify, not the broader array of litigation sanctions applicable to
parties contemplated in Rule 37(b)(2).[166]

In short, Rule 37(b)(2) cannot support the dismissal sanction
imposed against the Director because the documents at issue were
sought from nonparties pursuant to Rule 45 subpoenas.[167] And as
discussed below, this is not a case where a party can be held liable for
nonparty conduct.

### B. No exception applies allowing the conduct of others to be attributable to the Director.

This Court has held that "a party is not obliged to produce, at the
risk of [Rule 37] sanctions, documents that it does not possess or cannot

---

159 F.R.D. 366, 368 (D. Conn. 1994); *In re Exxon Valdez*, 142 F.R.D. 380
(D.D.C. 1992).

[165] *See Fisher*, 526 F.2d at 1341.

[166] *Gen. Ins. Co. of Am. v. E. Consol. Utilities, Inc.*, 126 F.3d 215, 221 (3d
Cir. 1997).

[167] *See Mazzocchi*, above.

obtain."[168] The "burden is on the party seeking discovery to make a showing that the other party has control over the materials sought."[169] Here, neither the Director, nor the NLRB, have possession, custody, or control of the documents subject to subpoena.[170] Accordingly, this is not one of the precious few cases where the failure of a nonparty to comply with a discovery order is attributable to a party.[171]

The Director and the agency for which she works do not control the subpoenaed nonparties, nor are they alter egos. The Director cannot make the subpoenaed nonparties comply with subpoenas the nonparties believe impermissibly delve into protected matter, nor could she assume responsibility for their compliance. The subpoenaed nonparties and Director do not have a relationship comparable to a principal and agent, corporation and officers, or employer and employee. Instead, the

---

[168] *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007).

[169] *In re Dunne*, No. 3:17-CV-1399 (MPS), 2018 WL 4654698, at *4 (D. Conn. Sept. 27, 2018).

[170] *See id; see also* Fed. R. Civ. P. 34(a) ("Any party may serve on any other party a request . . . to produce . . . documents . . . which are in the *possession, custody or control* of the party upon whom the request is served") (emphasis added).

[171] *Compare Herbst v. Able*, 63 F.R.D. 135, 138 (S.D.N.Y. 1972) (defendant deemed to control its own employees).

subpoenaed nonparties are independent actors who believe that the

subpoenas served on them unlawfully intrude on matters protected by

confidentiality interests under federal law. The fact that the Director

substantially concurs with that view does not make her or the NLRB

legally responsible for nonparties' acts or omissions.

> ### C. Even if Rule 37 applied to this case, it would still not justify the sanction of dismissal.

Even assuming Rule 37 applied here, the sanction of dismissal

was not permissible. Such sanctions serve to further compliance with

discovery orders and deter noncompliance.[172] In assessing appropriate

sanctions, a court should consider: the willfulness of the non-compliant

party or the reason for noncompliance, whether the non-compliant party

had been warned of the consequences of noncompliance, the efficacy of

lesser sanctions, and the duration of the period of noncompliance.[173]

Moreover, "due process requires that the most severe sanctions of

---

[172] *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979).

[173] *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).

dismissal or default be imposed only if the failure to comply is due to willfulness, bad faith, or fault, and not to an inability to comply."[174]

First, the reason for the subpoenaed nonparties' noncompliance here is crucial. They have taken the consistent, principled position before the district court and this Court that the discovery sought is both improper under the Federal Rules and unlawful under the NLRA.[175] Nor does the Director have any ability to force the nonparties to comply with the subpoenas or effectuate compliance on her own, as explained above.

Additionally, the nonparties pursued the sole available remedy to vindicate their NLRA claims: filing a charge with the NLRB, triggering the Director's statutory obligation to investigate the *Guess?* charge and pursue appropriate proceedings.[176] Indeed, this Court has made clear

---

[174] *In re Att'y Gen. of U. S.*, 596 F.2d 58, 66 (2d Cir. 1979) (citing *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 212 (1958).

[175] *See* ECF 42; ECF 43; ECF 53; ECF 81; ECF 108; *see generally In Re: Workers United*, Case No. 22-3229 (2d Cir. 2023).

[176] 29 U.S.C. § 160(a), (b); 29 C.F.R. §§ 101.4, 101.8.

that fault, or willfulness, for the purposes of Rule 37 should not be attributed to a party if it is acting pursuant to other legal obligations.[177]

Second, by the time the district court warned the Agency that its Section 10(j) petition would be dismissed if the *Guess?* case was not terminated, that complaint had already been adjudicated by an ALJ and then transferred to the five-member Board.[178] The Board is a distinct party from the Director with separate statutory functions.[179] Once a case has been transferred to the Board, neither the Director, nor the Board's General Counsel have unilateral authority to withdraw a complaint.[180] Even a Board order dismissing the *Guess?* complaint would not be the end of the story. A court of appeals would have exclusive review jurisdiction of the Board's order under Section 10(f) of

---

[177] *Shcherbakovskiy*, 490 F.3d at 139.

[178] See 29 C.F.R. § 102.45.

[179] *See* 29 U.S.C. § 153(a), (b), (d).

[180] *Nat'l Nurses Org. Cmte.*, 370 NLRB No. 128, slip op. at 1 (2021). Indeed, the General Counsel loses the power to unilaterally withdraw a complaint once they begin the presentation of merits evidence at the unfair labor practice hearing. *See Sheet Metal Workers Int'l Assoc.,* 306 NLRB 981, 982 (1992).

the NLRA.[181] Thus, the district court exceeded its discretion by its failure to give advance notice of the possibility of dismissal, or to consider the inability of the Director to comply with the court's directive to terminate the *Guess?* proceeding. As this Court has stated, "if the party is unable to obey there can be no effective deterrence [of noncompliance], general or specific."[182]

Third, the district court failed to meaningfully consider alternatives to dismissal, including compelling compliance with the subpoenas appropriately under the applicable provision, Rule 45. The NLRB's *Guess?* proceeding could not prevent the court from utilizing Rule 45. But the district court stated, without explanation, that such use of that rule would be ineffective because "the issue of the NLRB's *Guess?* proceeding would persist."[183] Yet, that proceeding—with its potential remedial order issuing perhaps months or years later—does

---

[181] 29 U.S.C. § 160(a), (b); *see, e.g., Sanchez v. NLRB*, 785 F.2d 409, 409 (2nd Cir. 1986); *accord Albrecht v. NLRB*, 181 F.2d 652, 655 (7th Cir. 1950) ("Section 10(f) gives [appeals courts] jurisdiction to review a Board order dismissing a complaint.").

[182] *Cine Forty-Second St.*, 602 F.2d at 1066.

[183] SA035.

not negate the court's immediate authority to compel compliance with subpoenas.

Fourth, the duration of the period of noncompliance is irrelevant to the analysis because the Director was not directed to take action until the court issued its conditional dismissal order.

Finally, due process requires that "the most drastic sanctions may not be imposed as 'mere penalties[.]'"[184] Under the circumstances here, the dismissal of the 10(j) proceeding runs afoul of constitutional limitations upon the power of courts, "even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of [her] cause."[185]

## IV. The district court's dismissal order was not a permissible exercise of its equitable or inherent authority.

To the extent that the district court relied upon its "discretionary power to issue or deny an injunction[,]"[186] such authority cannot substitute for applicable Federal Rules and cannot displace statutory

---

[184] *Id.* (citing *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, (1909)).

[185] *Societe Internationale*, 357 U.S. at 209.

[186] SA032 (quoting *Sperandeo v. Milk Drivers & Dairy Emp. Loc. Union No. 537*, 334 F.2d 381, 385 (10th Cir. 1964)).

limits on a court's power. And there is no indication that the prescribed method for obtaining subpoena compliance, Rule 45, is not "up to the task," requiring inherent power to fill the interstices of the rules.[187] In any event, throwing the Director's entire case out of court could hardly be described as a "reasonable response" to a problem of subpoena compliance she cannot control.[188]

Despite the district court's characterization of an agency acting to "thwart the Court's discovery order[,]"[189] the record discloses no misconduct by the Director, whose official acts are entitled to a presumption of regularity.[190] To the contrary, the Director and agency attorneys have acted with honesty of purpose and properly discharged their duties pursuant to statute, agency regulation, and court rules. The docket shows that agency attorneys regularly updated the district court regarding the status of related proceedings and forthrightly presented

---

[187] *See Chambers*, 501 U.S. at 50.

[188] *See Dietz v. Bouldin*, 579 U.S. 40, 45 (2016).

[189] SA033.

[190] *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004).

52

the agency's position.[191] Dismissal premised on bad faith has no application here.

Nor did the district court possess the power to dismiss the injunction petition based on its "own notions of fairness and efficiency."[192] Its remit was to apply equitable principles "in the context of federal labor laws."[193] Although the dismissal order adverts to a case discussing maxims of equity,[194] an unclean hands defense "may not be invoked against a governmental agency which is attempting to enforce a congressional mandate in the public interest."[195] The doctrine of unclean hands is moreover concerned with *pre-litigation* conduct and "does not reach out to extinguish a . . . right based on misconduct during litigation to enforce the right."[196] Furthermore, it is a maxim that

---

[191] *See* ECF 34; ECF 68; ECF 73; ECF 90.

[192] *Kobell v. Suburban Lines*, 731 F.2d 1076, 1089 (3d Cir. 1984).

[193] *Kreisberg v. HealthBridge Mgmt., LLC*, 732 F.3d 131, 143 (2d Cir. 2013).

[194] SA031 (citing *Madden v. Milk Wagon Drivers Union*, F. Supp. 490, 492 (N.D. Ill. 1964)).

[195] *Gulf & W. Indus.*, 502 F. Supp. at 348.

[196] *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1375 (Fed. Cir. 2001).

"equity follows the law."[197] Where a statute or rule is on point, a court in equity is bound to follow it.[198] Here, Rule 45, which governs non-compliance with subpoenas to nonparties, as well as the statutory authority of the Director and agency to pursue violations of the NLRA, must take precedence.

## V. The district court lacked jurisdiction to dictate the outcome of an executive branch proceeding as a condition of adjudicating a petition for statutory injunctive relief.

The power of the district court to manage its own affairs does not extend to managing the affairs of another tribunal, particularly one housed in a different branch of government. As a general matter, district courts are jurisdictionally precluded from interfering with NLRB unfair-labor-practice proceedings. Because a court's powers cannot reach into areas Congress has placed off-limits, the district court's order to dismiss the *Guess?* proceeding is unsustainable. Interference with core statutory functions of policymaking and prosecutorial discretion committed to the Executive Branch impermissibly offends the constitutional separation of powers.

---

[197] *Hedges v. Dixon Cnty.*, 150 U.S. 182, 192 (1893).

[198] *In re Shoreline Concrete Co., Inc.*, 831 F.2d 903, 905–06 (9th Cir. 1987).

54

### A. Decades of settled law preclude district courts from interfering in pending NLRB proceedings.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."[199] For more than eighty years, the Supreme Court has recognized that Congress intentionally precluded district courts from reviewing or interfering with non-final NLRB actions.[200]

Congress provided exclusive jurisdiction to the NLRB to initially administer the unfair-labor-practice provisions of the NLRA.[201] As the Supreme Court held in *Myers v. Bethlehem Shipbuilding*, the Board's adjudication of such cases is subject to judicial review only upon the issuance of a final Board order at the conclusion of an unfair-labor-practice proceeding, and then only in a United States court of appeals.[202] At that point "all questions of constitutional right or

---

[199] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

[200] *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48, 51 (1938).

[201] *See* 29 U.S.C. § 160(a), (c); *Myers*, 303 U.S. at 50.

[202] *See* 29 U.S.C. § 160(e), (f); *Myers*, 303 U.S. at 48, 51.

statutory authority are open to examination by the court."[203] In the

meantime, the statutory structure of the NLRA simply does not permit

"over-the-shoulder supervision" of NLRB proceedings by district

courts.[204] And because Starbucks will have an unquestioned right to

present its claims to a court of appeals, it cannot demonstrate the

"sacrifice or obliteration" of any right that would implicate an exception

to this rule of preclusion.[205]

> B. A district court order requiring the "termination" of an NLRB
> proceeding interferes with the jurisdiction of the courts of
> appeals.

Additionally, the district court's conditional dismissal order

requiring the agency to "terminate" the *Guess?* proceeding subverts the

authority of the courts of appeals to pass upon the decisions of the

Board. Courts are not free to ignore Congress' jurisdictional

assignments.[206] "[A] statute which vests jurisdiction in a particular

---

[203] *Myers*, 303 U.S. at 49.

[204] *Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 673 (5th Cir. 1966).

[205] *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 43 (1991))*; Leedom v. Kyne*, 358 U.S. 184, 188, 190 (1958); *accord Goethe House New York, German Cultural Center v. NLRB*, 869 F.2d 75, 78, 80 (2d Cir. 1989).

[206] *Myers*, 303 U.S. at 50.

court cuts off original jurisdiction in other courts in all cases covered by that statute."[207] Where statutes channel review of agency enforcement actions to the courts of appeals, district courts are precluded from entertaining pre-enforcement challenges to those actions.[208]

The NLRA unambiguously assigns exclusive jurisdiction to review final Board actions to the courts of appeals.[209] To wit, the review jurisdiction of a court of appeals over a final Board order "shall be exclusive" once the record of the proceeding has been filed with the court.[210] It is therefore appropriate for the courts of appeals to protect their own prospective jurisdiction to hear petitions for review of NLRB cases by removing any artificial obstacles to such review created by district courts.[211] Because the district court below sought to compel the premature "termination" of the *Guess?* proceeding, it impermissibly

---

[207] *Telecommunications Research & Action Ctr. v. FCC (TRAC)*, 750 F.2d 70, 77 (D.C. Cir. 1984).

[208] *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 216 (1994).

[209] *Myers*, 303 U.S. at 50.

[210] 29 U.S.C. § 160(e).

[211] *Cf. TRAC*, 750 F.2d at 77.

interposed barriers to the exclusive jurisdiction of the courts of appeals

to resolve unfair labor practice cases.

> ### C. A district court may not hijack an administrative proceeding to further judicial objectives.

Aside from the jurisdictional problems created by the district

court's conditional dismissal order here, it creates a serious

constitutional problem. Specifically, it usurps authority assigned by the

Constitution and statute to executive officers. This Court generally

avoids constitutional questions if a case may be decided on another

basis—and, here, there are many such bases.[212] But the transgression of

constitutional separation of powers here cannot go unstated. The

district court interjected itself into two important spheres of executive

power, prosecutorial and policymaking authority. And here, the

interference was especially intolerable because the Director and agency

were acting pursuant to express statutory authority.[213]

The Director, under the authority of the NLRB General Counsel,

is responsible for investigating alleged unfair labor practices when a

---

[212] *See, e.g., Horne v. Coughlin*, 178 F.3d 603, 605 (2d Cir. 1999).

[213] *See generally Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J, concurring).

58

charge is filed and litigating the matter before the Board and its

ALJs.[214] The General Counsel, appointed by the President, has "final

authority . . . in respect of the investigation of charges and issuance of

complaints . . . and in respect of the prosecution of such complaints

before the Board."[215] The Board, in turn, is empowered to "prevent any

person from engaging in any unfair labor practice" which power is not

affected "by any other means of adjustment or prevention that has been

or may be established by agreement, law, or otherwise."[216]

This statutory allocation of authority reflects deeply rooted

understandings regarding the limited role of the judicial branch of

government. With respect to law enforcement, the "exclusive authority

and absolute discretion" to decide whether to prosecute a case resides in

the Executive Branch.[217] Even where courts have a role in appointing

prosecutors, they retain no power to "control or supervise"

---

[214] 29 C.F.R. §§ 102.4, 102.8-102.11.

[215] 29 U.S.C. § 153(d).

[216] 29 U.S.C. § 160(a).

[217] *United States v. Nixon*, 418 U.S. 683, 693 (1974).

prosecutions.[218] Such power remains subject to executive authority.[219] Accordingly, this Court has placed limits on "[a] district court's involvement in the executive branch's decision to abandon litigation" because of the doctrine of separation of powers.[220] The separation of powers problems here are heightened by the statutory commands of the NLRA, which requires the Board to decide unfair labor practice questions by "stat[ing] its findings of fact" and either ordering a remedy or dismissing a complaint.[221]

The district court's order also impermissibly intruded upon the Board's congressionally granted authority to "effectuate the policies" of the NLRA by ruling on unfair labor practice cases.[222] "Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law."[223] And "aggrandizement of . . . power at the expense of a coordinate branch" calls for strict limitations

---

[218] *Morrison v. Olson*, 487 U.S. 654, 692 (1988).

[219] *United States v. Donziger*, 38 F.4th 290, 302 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 868 (2023).

[220] *In re IBM Corp.*, 687 F.2d 591, 602 (2d Cir. 1982).

[221] 29 U.S.C. § 160(c).

[222] *Id.*

[223] *Bowsher v. Synar*, 478 U.S. 714, 733 (1986).

on such overreach.[224] Here, the district court's conditional dismissal order aggrandized the court's judicial power to obtain compliance with its orders at the expense of the core statutory functions of a coordinate branch. Any Board decision would be subject to appropriately limited judicial review under the NLRA before a court of appeals. That is enough; the district court had no remit to engage in a sweeping inquest of Board proceedings it felt was reducing the efficacy of its own orders.

Here, the district court concluded without explanation that the *Guess?* case was enabling obstruction of the subpoenas and thwarting its orders.[225] But that proceeding presents a distinct statutory issue committed to the agency's exclusive jurisdiction. Where two claims can only be brought in mutually exclusive tribunals, they can—indeed, must—proceed in parallel.[226] In a comparable situation involving enforcement of an arbitration award, a court within this circuit agreed. "Neither of the two relevant NLRB proceedings ha[d] preclusive effect

---

[224] *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 856 (1986) (distinguishing *Bowsher*).

[225] SA030–35.

[226] *See Cunningham v. United States*, 748 F.3d 1172, 1178 (Fed. Cir. 2014); *United States v. Cunan*, 156 F.3d 110, 115 (1st Cir. 1998).

on the narrow, separate dispute that the parties . . . submitted to arbitration," and therefore, the arbitrator's award could "be enforced with no disrespect for the NLRB decision."[227]

The only way the *Guess?* proceeding could affect the rights of parties in the district court case would be indirectly, via a court of appeals order enforcing an NLRB remedy as to the subpoenas at issue. But that issue may be resolved by the court of appeals upon enforcement of that potential order. Thus, any potential preclusion issue may be resolved, if it arises, according to those principles of law.[228]

Instead, the district court attempted to decide for itself a core question of statutory policy and interpretation committed by statute to the Board. Accordingly, this is not a case where "the magnitude of any intrusion" of the Board's executive function "can only be termed *de minimis*."[229] The court below attempted to dictate the outcome of the

---

[227] *Time Warner Cable of N.Y.C., LLC v. IBEW, Local 3*, 170 F. Supp. 3d 392, 418 (E.D.N.Y. 2016) (Weinstein, J.).

[228] *See Local 32B-32J SEIU v. NLRB*, 982 F.2d 845, 849 (2d Cir. 1993).

[229] *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 679 (2015) (bankruptcy court adjudication of common-law claims incidental to their primary function was a *de minimis* intrusion on Judicial Branch).

*Guess?* case, amounting to an effort to commandeer the Executive

Branch of government for its own ends. That cannot stand.

**VI.  This Court should remand with instructions to grant the injunction and reassign the case to a different judge.**

*A. The record supports the requested injunction; no further proceedings are necessary on that issue.*

1.  Any further proceedings would unduly delay Section 10(j) relief.

There is no need for the Court to remand this case to the district

court to make findings on the merits of the injunction request. Because

there is a fully developed administrative record, including just and

proper testimony that was subject to Starbucks's cross-examination,

further proceedings are unnecessary and would only delay the needed

interim relief.[230] Indeed, this Court and others have reversed district

court denials of 10(j) petitions and directed district courts to enter

---

[230] *See Kaynard v. Indep. Routemen's Ass'n*, 479 F.2d 1070, 1073 (2d Cir. 1973) (reversing denial of § 10(l) injunction and remanding to the district court for entry of requested injunctive relief); *Kosty v. Lewis*, 319 F.2d 744, 749 (D.C. Cir. 1963) ("where the evidence of record points in only one direction . . . justice does not require [a remand for further proceedings]"). *Accord Brown & Williamson Tobacco Corp. v. FTC*, 717 F.2d 963, 964 (6th Cir. 1983); *Talley v. U.S. Postal Serv.*, 720 F.2d 505, 508 (8th Cir. 1983).

orders granting the requested relief, even absent district court

determinations on one or both prongs of the 10(j) test.[231]

As discussed below, this Court has all the facts needed to make

both the reasonable cause and just and proper determinations. A

remand for the district court to consider the merits of the injunction

petition at this point would unduly prolong this proceeding. On the

other hand, the Court's direction of injunctive relief would minimize the

litigation involved and thus expedite the 10(j) relief against unfair labor

practices while the remedy can still effectuate the purposes of the Act.

> 2.     There is reasonable cause to believe that Starbucks
>        violated the Act; an injunction is just and proper.
>
>    a.     The applicable Section 10(j) standards

---

[231] *See, e.g., Hoffman*, 247 F.3d at 365 (ordering § 10(j) injunction
without remand even though district court did not make reasonable
cause determination); *Pascarell v. Vibra Screw, Inc.*, 904 F.2d 874, 882
(3d Cir. 1990) (reversing district court, which failed to consider
reasonable cause issue and misinterpreted just and proper standard;
court of appeals decided both questions); *Aguayo v. Tomco Carburetor
Co.*, 853 F.2d 744, 750–51 (9th Cir. 1988) (finding no need to further
develop record in district court); *see also Indep. Routemen's Ass'n*, 479
F.2d at 1073 (Second Circuit made reasonable cause and just and
proper findings; remanded to district court for entry of analogous § 10(l)
injunction).

Under Section 10(j), courts may grant temporary injunctions pending the Board's resolution of unfair-labor-practice proceedings to protect the Board's remedial authority during the delay inherent in Board administrative litigation.[232] In this Court, 10(j) relief is warranted when there is "reasonable cause to believe" that a respondent has violated the Act and when interim relief is "just and proper" under the circumstances.[233]

Under the first prong, the Director's burden is to establish that there is "reasonable cause to believe that a Board decision finding an unfair labor practice will be enforced by a Court of Appeals."[234] When, as here, there is a decision by the ALJ, the Board's initial fact-finder, that decision provides "a useful benchmark" against which to weigh the strength of the Director's theories of violation.[235] Therefore, courts rely on the ALJ's findings and conclusions, when available, in evaluating

---

[232] *See, e.g.*, *Seeler v. Trading Port, Inc.*, 517 F.2d 33, 37–38 (2d Cir. 1975).

[233] *See, e.g.*, *HealthBridge Mgmt.*, 732 F.3d at 141–42.

[234] *Kaynard v. Mego Corp.*, 633 F.2d 1026, 1033 (2d Cir. 1980).

[235] *Bloedorn v. Francisco Foods, Inc.*, 276 F.3d 270, 288 (7th Cir. 2001).

"reasonable cause."[236] Indeed, the "[ALJ's] factual findings are part of the record and cannot be ignored."[237]

Under the second prong, injunctive relief "is just and proper when it is necessary to prevent irreparable harm or to preserve the status quo,"[238] and to preserve the Board's ability to issue a meaningful final remedy.[239]

<div align="center">

b.  <u>The record amply establishes reasonable cause to believe Starbucks violated the Act.</u>

</div>

The ALJ found that Starbucks engaged in "widespread coercive activity" and exhibited "widespread union animus" toward employees' organizing campaign.[240] The ALJ found numerous "hallmark violations" that can "have a lasting negative and coercive effect on the workforce[.]"[241] Starbucks's egregious violations included: (1) the unlawful discharge of seven Union activists and supporters;[242] (2)

---

[236] *Seeler*, 517 F.2d at 37 n.7; *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 238 (6th Cir. 2003).

[237] *Silverman v. J.R.L. Food Corp.*, 196 F.3d 334, 335 (2d Cir. 1999).

[238] *Hoffman*, 247 F.3d 360 at 368.

[239] *Mego*, 633 F.2d at 1034.

[240] A327, A336.

[241] A340.

[242] A332–38.

<div align="center">66</div>

announcing and issuing an unprecedented wage increase to some employees;[243] (3) unlawful threats, soliciting grievances, and promises to grant benefits;[244] and (4) the permanent closure of the Galleria kiosk, among other violations.[245] Based on these hallmark violations, the ALJ recommended a bargaining order for the Camp Road location and other relief, including reinstatement.[246]

This ALJ decision amply establishes reasonable cause to believe that Starbucks committed the violations for which the Director seeks injunctive relief. The ALJ made credibility determinations, extensive factual findings and comprehensive conclusions, reviewed and analyzed the evidence presented, and cited extensively to the transcript and exhibits. The ALJ's legal conclusions are supported by settled Board law. Therefore, there is strong cause to believe that the Board will find that Starbucks violated the Act.[247]

c.  The record establishes the need for injunctive relief.

---

[243] A178, A297–98.

[244] A193, A208–13, A291–96, A300–01, A303–06.

[245] A318.

[246] A339–42.

[247] *J.R.L. Food Corp.*, 196 F.3d at 335; *Seeler*, 517 F.2d at 37 n.7.

The record is also replete with evidence that Starbucks's violations have caused harm to employee rights that will be irreparable if left unremedied pending a Board order. Starbucks committed the type of violations this Court considers to be highly impactful "hallmark" violations and from which this Court infers a harmful effect.[248] Violations like the seven discharges here risk a "serious adverse impact on employee interest in unionization."[249] Likewise, threats and grants or withholding of benefits are "so coercive" that they can severely chill an organizing campaign,[250] and support the need for interim relief.[251]

Furthermore, there is evidence of harm in the record supporting this recognized inference of harm. The administrative hearing included testimony on the "just and proper" element of § 10(j).[252] Employees testified that they felt hopeless about the Union due to Starbucks's

---

[248] *NLRB v. Jamaica Towing*, 632 F.2d 208, 212–13 (2d Cir. 1980).

[249] *Palby Lingerie*, 625 F.2d at 1052; *see also Abbey's Transp. Servs., Inc. v. NLRB*, 837 F.2d 575, 576 (2d Cir. 1988).

[250] *Gissel Packing Co.*, 395 U.S. at 589–90, 612–15, 620.

[251] *See Palby Lingerie*, 625 F.2d at 1052.

[252] Starbucks had ample opportunity to present its own "just and proper" evidence. Starbucks extensively cross-examined the Director's "just and proper" witnesses and elicited testimony about some employees' continued support for the Union. A094, A147.

"backlash against it," organizing slowed, and support waned as a result.[253] Employees felt surveilled and feared retaliation.[254] Starbucks's response in Buffalo impacted stores across the nation, and employees in other regions testified about their fear based on the Buffalo violations and how it slowed their organizing efforts.[255] As further proof that Starbucks's violations are having their predictable chilling effect on employee organizing rights, some employees at the Delaware & Chippewa Starbucks in Buffalo filed a petition seeking to decertify the Union.[256]

In sum, there is ample evidence for this Court to conclude that the Director met both prongs of the 10(j) test and that the requested injunctive order should issue.

---

[253] A074–77, A084–85, A142, A145–46.

[254] A078–79, A091–93, A098, A113–25, A138–41, A143–44, A150.

[255] A091–92, A095, A120–23.

[256] A397–98.

   *B. On remand, this case should be reassigned to preserve the
   appearance of justice, because the district judge publicly
   questioned the legitimacy and fairness of Board proceedings.*

This Court may remand a case to a different judge when an

objective observer might reasonably question the judge's impartiality.[257]

Courts contemplate several factors when considering reassigning a case

on remand: (1) whether upon remand "the original judge would

reasonably be expected" to have "substantial difficulty" putting out of

their mind "previously expressed views or findings determined to be

erroneous or based on evidence that must be rejected," (2) "whether

reassignment is advisable to preserve the appearance of justice," and (3)

whether it would "entail waste and duplication out of proportion to any

gain in preserving the appearance of fairness."[258]

When the district judge makes a "visceral judgment" and

negatively characterizes a party's representations without sound legal

foundation, it is "questionable" whether the judge can take an "objective

---

[257] *Ligon v. City of N.Y.*, 736 F.3d 118, 128 (2d Cir. 2013) (internal
citation omitted).

[258] *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 142 (2d Cir.
2007) (quoting *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977) (per
curiam)).

second look" on remand under the first factor.[259] It also "certainly"

undermines the appearance of justice.[260]

Here, the district judge made repeated statements showing

antipathy and bias towards the legitimacy of the NLRB's proceedings

and the statutory rights of employees. The district judge consistently

criticized the Board's proceedings for their lack of discovery

mechanisms. For instance, during the September 23, 2022, hearing, the

district judge distinguished his courtroom on the eighth floor from the

Board's proceedings on the sixth floor of the same building, stating

"[w]ell, here's the thing. Here's where you are. You're on the eighth floor

now and both sides get a fair shot on this floor."[261] He again expressed

doubts about the fairness and integrity of Board proceedings when he

---

[259] *Id.* at 142 (reassignment to new judge warranted where original judge described party's position as "'nonsense,' 'drivel,' a 'fraud,' and a 'lie.'").

[260] *Id.* ("appearance of justice would be well-served by reassignment on remand" (citing cases)). *See also United States v. Campo*, 140 F.3d 415, 418, 420 (2d Cir. 1998) (where judge made it "abundantly clear" that he would not consider the government's motion on the merits, this "firmly expressed position" warranted reassignment to another judge on remand to preserve "the appearance of impartiality").

[261] A430 (implying that agency proceedings, in which Starbucks was given the opportunity to present "just and proper" evidence and to cross-examine the Director's witnesses, were unfair).

questioned whether he was supposed to "essentially rubber stamp the agency" given the ALJ's decision and the Board's "success[] thus far in its own tribunal[.]"[262]

Additionally, the district judge was critical of the agency's statutory duty to investigate a charge that the Respondent's subpoenas independently violated the Act, inquiring whether there was "anything unfair about that[.]"[263] Rather than recognizing the agency's role in effectuating the Act, he characterized the Director's investigation of the Union's charge and prosecution of the resulting complaint, supported by Board law, as contrary to his discovery order, "effectively challeng[ing] the District Court's discovery rulings[,]" and "enabling [the Union's] obstruction."[264] Furthermore, the court's Decision and Order described the Board's *Guess?* complaint as "repugnant" to notions of fairness and an "elect[ion] to thwart the Court's discovery order[.]"[265] The court granted Respondent's motion to dismiss unless the Board certified that

---

[262] A473, A502.

[263] A480–81.

[264] A501–02.

[265] SA033.

the General Counsel "has terminated all efforts to impede or frustrate the discovery order, including termination of the *Guess?* proceeding."[266]

Here, the casting of aspersions on Board proceedings and the Director's actions in enforcing the Act by the district judge here raises the same concerns with the appearance of justice as did the judge's actions in *Shcherbakovskiy*. Like that judge, who outright rejected the relevance of Russian law to the discovery dispute in that case, the district judge here utterly dismissed the relevance of NLRA law and its interplay with court discovery, including *Guess?*.[267] Additionally, in both instances, the district court required the parties to comply with the discovery order or risk having their case dismissed, without considering lesser sanctions.[268]

Finally, reassignment is appropriate since it would not entail waste or duplication; here, the district court has not reached a decision on the merits of the relief requested or conducted any evidentiary hearings.[269] Thus, the district court's firm expressions condemning the

---

[266] SA036.

[267] *See* A429; *Shcherbakovskiy*, 490 F.3d at 136.

[268] *See* SA035; *Shcherbakovskiy*, 490 F.3d at 136.

[269] *See United States v. Johnson*, 850 F.3d 515, 525 (2d Cir. 2017).

Board's statutory proceedings and the Director's actions here as unfair and invalid, together with the early stage of this 10(j) proceeding, support the reassignment of the case to a new judge on remand, under *Shcherbakovskiy* and *Robin*.

## **CONCLUSION**

The district court's legal errors have already significantly delayed justice and endangered the statutory rights of employees. This case involved the first of hundreds of stores to become part of the Union's organizational campaign as well as an aggressive and widespread response in the form of hundreds of violations of the law. The vindication of the policies reflected in the NLRA has implications reaching far beyond the individual employees directly affected. It is not too late to rectify Starbucks's wrongdoing. Accordingly, we ask the Court to remand this matter with instructions to enter the requested injunction and reassign the matter to a different judge to preserve the appearance of fairness in any subsequent proceedings.

Respectfully submitted,

LAURA T. VAZQUEZ
*Deputy Assistant General Counsel*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*

/s/ Paul A. Thomas
PAUL A. THOMAS
*Supervisory Trial Attorney*

/s/ David P. Boehm
DAVID P. BOEHM
*Trial Attorney*

MADELINE Y. CORKETT
 *Trial Attorney*

JENNIFER A. ABRUZZO              National Labor Relations Board
  *General Counsel*              1015 Half Street, S.E., 4th Floor
PETER SUNG OHR                   Washington, DC 20003
  *Deputy General Counsel*       202-273-4202
RICHARD A. BOCK
  *Associate General Counsel*
NANCY E. KESSLER PLATT
  *Associate General Counsel*
RICHARD J. LUSSIER
  *Deputy Assoc. General Counsel*
DAWN L. GOLDSTEIN
  *Deputy Assoc. General Counsel*
ROBERT N. ODDIS
  *Assistant General Counsel*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rules of Appellate Procedure 32(a)(5)-(6), 32(a)(7)(B), and 32(g)(1), the Board certifies that its final brief contains 13,647 words of proportionally spaced, 14-point type, and the word-processing software used was Microsoft Word for Office 365. The Board further certifies that the PDF file submitted to the Court has been scanned for viruses using Microsoft Defender and is virus-free according to that program.

<div style="margin-left: 40%;">

<u>s/ David P. Boehm</u>
David P. Boehm
Attorney
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-4202

</div>

Dated at Washington, DC
this 19th day of October 2023

# CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system. I certify further that the foregoing document was served on all parties or their counsel of record through the appellate CM/ECF system.

<u>s/ David P. Boehm</u>
David P. Boehm
Attorney
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-4202

Dated at Washington, DC
this 19th day of October 2023