# 23-1194

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

LINDA M. LESLIE, Regional Director of the Third Region
of the National Labor Relations Board for and on behalf
of the National Labor Relations Board,

Petitioner-Counter-Defendant-Appellant,

v.

STARBUCKS CORP.,

Respondent-Counter-Claimant-Appellee.

———————————

**On Appeal from the United States District Court for the Western District of New York, 1:22-cv-00478-JLS (W.D.N.Y.)**

———————————

### APPELLANT'S REPLY BRIEF

JENNIFER A. ABRUZZO
 *General Counsel*
PETER SUNG OHR
 *Deputy General Counsel*
RICHARD A. BOCK
NANCY E. KESSLER PLATT
 *Associate General Counsels*
RICHARD J. LUSSIER
DAWN L. GOLDSTEIN
 *Deputy Assoc. General Counsels*
ROBERT N. ODDIS
 *Assistant General Counsel*

LAURA T. VAZQUEZ
KEVIN P. FLANAGAN
 *Deputy Assistant General Counsels*
PAUL A. THOMAS
 *Supervisory Trial Attorney*
DAVID P. BOEHM
MADELINE Y. CORKETT
MICHAEL S. DALE
 *Trial Attorneys*
NATIONAL LABOR RELATIONS BOARD
1015 HALF STREET, S.E., 4TH FLOOR
WASHINGTON, DC 20003
202-273-4202

# <u>TABLE OF CONTENTS</u>

I.   Starbucks's project to radically expand the scope and availability of expedited discovery in Section 10(j) cases should be rejected. ..........1

   A.  Starbucks's subpoenas should have been quashed or highly limited; the district court's failure to do so was an abuse of discretion. ........................................................................3

   B.  Expedited discovery should be limited in breadth. ......................8

II.  The district court's failure to apply the correct legal standards and consider important factors warranted reconsideration. ......................10

III. Neither the Federal Rules nor the district court's inherent powers permitted the court to dismiss the Section 10(j) petition because nonparties refused to comply with subpoenas. ...................................12

   A.  Rule 45 remains the proper means to obtain compliance with nonparty subpoenas, a method the district court never attempted. 12

   B.  It was error to deploy Rule 37 sanctions against the Director for carrying out her statutory duties. ....................................................16

   C.  Inherent power did not permit the district court to dismiss this case. ..................................................................................................17

   D.  The Guess? proceeding was a proper exercise of the agency's statutory authority to prevent and remedy unfair labor practices. .20

IV.  Starbucks's separation of powers argument inverts the reality of this case. ....................................................................................................22

   A.  The Guess? proceeding does not violate separation of powers....23

   B.  Board proceedings do not interfere with judicial functions and its orders do not have binding effect unless enforced by an Article III court. ...............................................................................................25

   C.  Starbucks's remaining constitutional arguments lack merit......27

V.  This Court should direct the requested injunction or remand this case with instructions. ...........................................................................29

   A.  Starbucks had a full and fair opportunity to present evidence on the just-and-proper element of Section 10(j). ...................................29

B.  This Circuit has previously directed injunctions when analyzing 10(j) factors anew. .................................................................33

VI. The district judge's statements undermine the appearance of justice; reassignment is warranted. ......................................34

CONCLUSION .........................................................................36

CERTIFICATE OF COMPLIANCE ........................................38

CERTIFICATE OF SERVICE................................................39

# TABLE OF AUTHORITIES

**Cases** ................................................................................... **Page(s)**

*Aguayo v. Tomco Carburetor Co.*,
   853 F.2d 744 (9th Cir. 1988) ................................................................ 34

*AT&T v. FCC*,
   449 F.2d 439 (2d Cir. 1971) ................................................................. 27

*Atkins v. New York City*,
   143 F.3d 100 (2d Cir. 1998) ................................................................. 10

*Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n*,
   430 U.S. 442 (1977) .......................................................................... 24

*Bill Johnson's Rests., Inc. v. NLRB*,
   461 U.S. 731 (1983) .......................................................................... 28

*Chester v. Grane Healthcare Co.*,
   666 F.3d 87 (3d Cir. 2011) ................................................................. 29

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) .......................................................................... 19

*Commodity Futures Trading Comm'n v. Schor*,
   478 U.S. 833 (1986) .............................................................. 23, 24, 25

*Corbett v. eHome Credit Corp.*,
   No. 10-cv-26, 2010 WL 3023870 (E.D.N.Y. Aug. 2, 2010) ..................... 3

*Cruz v. Meachum*,
   159 F.R.D. 366 (D. Conn. 1994) ......................................................... 12

*Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*,
   951 F.2d 1357 (2d Cir. 1991) .............................................................. 12

*Diaz v. Pro. Transp., Inc.*,
   996 F. Supp.2d 1215 (M.D. Fla. 2014) ................................................ 29

*Drukker Commc'ns v. NLRB*,
   700 F.2d 727 (D.C. Cir. 1983) ............................................................ 28

*Dunbar v. Landis Plastics*,
   977 F. Supp. 169 (N.D.N.Y. 1997) ....................................................... 2

*Eastman Kodak Co. v. STWB, Inc.*,
   452 F.3d 215 (2d Cir. 2006) ............................................................ 9, 10

*Exela Enter. Sols., Inc. v. NLRB,*
  32 F.4th 436 (5th Cir. 2022) ............................................................... 21

*First Am. Corp. v. Price Waterhouse LLP,*
  154 F.3d 16 (2d Cir. 1998) ................................................................... 4

*Fox Indus., Inc. v. Gurovich,*
  No. 2:03-cv-05166-SJF-WDW, 2006 WL 2882580 (E.D.N.Y. Oct. 6,
  2006) ....................................................................................................... 16

*G & T Terminal Packaging Co. Inc. v. NLRB,*
  459 F. App'x 19 (2d Cir. 2012) ......................................................... 2, 3

*Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776,*
  346 U.S. 485 (1953) ............................................................................ 24

*Gradford v. McDougall,*
  No. 1:17-CV-00575-DAD-GSA-PC, 2019 WL 1078356 (E.D. Cal. Mar.
  7, 2019) ................................................................................................. 13

*Guess?, Inc.,*
  339 NLRB 432 (2003) ........................................................................... 6

*Hester v. Vision Airlines, Inc.,*
  687 F.3d 1162 (9th Cir. 2012) ............................................................ 14

*Hoffman Plastic Compounds, Inc. v. NLRB,*
  535 U.S. 137 (2002) ............................................................................ 26

*Hoffman v. Inn Credible Caterers, Ltd.,*
  247 F.3d 360 (2d Cir. 2001) ......................................................... 32, 33

*In re Att'y Gen. of U.S.,*
  596 F.2d 58 (2d Cir. 1979) ................................................................. 19

*In re Exxon Valdez,*
  142 F.R.D. 380 (D.D.C. 1992) ............................................................ 12

*In re Public Offering PLE Antitrust Litig.,*
  427 F.3d 49 (1st Cir. 2005) .................................................................. 3

*Indep. Prods. Corp. v. Loew's Inc.,*
  283 F.2d 730 (2d Cir. 1960) ............................................................... 18

*Int'l Ladies' Garment Workers Union, Loc. 415-475 v. NLRB,*
  501 F.2d 823 (D.C. Cir. 1974) ............................................................ 21

iv

*Kaiser Steel Corp. v. Mullins*,
   455 U.S. 72 (1982) ................................................................ 6, 8

*Kaynard v. Independent Routemen's Association*,
   479 F.2d 1070 (2d Cir. 1973) ................................................ 33

*Kaynard v. MMIC, Inc.*,
   734 F.2d 950 (2d Cir. 1984) .................................................. 3

*Kaynard v. Palby Lingerie, Inc.*,
   625 F.2d 1047 (2d Cir. 1980) ............................................... 31

*Kreisberg v. HealthBridge Mgmt., LLC*,
   No. 3:12-CV-1299 (RNC), 2012 WL 6553103 n.8 (D. Conn. Dec. 14,
   2012) .................................................................................. 1

*Lechmere, Inc. v. NLRB*,
   502 U.S. 527 (1992) ............................................................ 24

*Ligon v. City of N.Y.*,
   736 F.3d 118 (2d Cir. 2013) ................................................ 35

*Lipscher v. LRP Publ'ns, Inc.*,
   266 F.3d 1305 (11th Cir. 2001) ........................................... 17

*Loc. 57, Int'l Ladies' Garment Workers' Union v. NLRB*,
   374 F.2d 295 (D.C. Cir. 1967) ............................................. 26

*Mattina v. Kingsbridge Heights Rehab. & Care Ctr.*,
   329 F. App'x 319 (2d Cir. 2009) .......................................... 1

*McKinney v. Starbucks Corp.*,
   77 F.4th 391 (6th Cir. 2023) ................................................ 4

*McKinney v. Starbucks Corp.*,
   No. 2:22-cv-2292-SHL-cgc, 2022 WL 5434206 (W.D. Tenn. Aug. 18,
   2022) .................................................................................. 6

*McKinney ex rel. NLRB v. Southern Bakeries*,
   786 F.3d 1119 (8th Cir. 2015) ............................................. 32

*Mistretta v. United States*,
   488 U.S. 361 (1989) ............................................................ 27

*Mitchell v. Lyons Pro. Servs., Inc.*,
   708 F.3d 463 (2d Cir. 2013) ................................................ 18

*Morrison v. Olson*,
487 U.S. 654 (1988) ............................................................... 23

*Moses v. Am. Apparel Retail, Inc.*,
No. 13-cv-2753-SHL-DKV, 2015 WL 4665968 (W.D. Tenn. Aug. 6,
2015) ...................................................................................... 15

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*,
463 U.S. 29 (1983) ........................................................... 19, 23

*Myers v. Bethlehem Shipbuilding Corp.*,
303 US 41 (1938) ............................................................. 15, 25

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,
458 U.S. 50 (1982) ............................................................... 25

*Nathanson v. NLRB*,
344 U.S. 25 (1952) ............................................................... 25

*Nat'l Licorice Co. v. NLRB*,
309 U.S. 350 (1940) ............................................................. 24

*NLRB v. Indus. Union of Marine & Shipbuilding Workers, Loc. 22*,
391 U.S. 418 (1968) ............................................................. 16

*NLRB v. Interboro Contractors, Inc.*,
432 F.2d 854 (2d Cir. 1970) ................................................. 28

*NLRB v. J. Weingarten, Inc.*,
420 U.S. 251 (1975) ............................................................. 25

*NLRB v. Jamaica Towing, Inc.*,
632 F.2d 208 (2d Cir. 1980) ................................................. 31

*NLRB v. Jones & Laughlin Steel Corp.*,
301 U.S. 1 (1937) ................................................................. 24

*NLRB v. Newark Elec. Corp.*,
14 F.4th 152 (2d Cir. 2021) .................................................. 19

*NLRB v. Sanford Home for Adults*,
669 F.2d 35 (2d Cir. 1981) ................................................... 28

*NLRB v. UFCW, Loc. 23*,
484 U.S. 112 (1987) ......................................................... 21, 22

*NLRB v. Williams Enters.*,
50 F.3d 1280 (4th Cir. 1995) ................................................ 31

*Overstreet v. United Bhd. of Carpenters*,
 409 F.3d 1199 (9th Cir. 2005)..............................................................34

*Pascarell v. Vibra Screw, Inc.*,
 904 F.2d 874 (3d Cir. 1990) ................................................................33

*Plaut v. Spendthrift Farm*,
 514 U.S. 211 (1995).............................................................................26

*R.R. Donnelley & Sons Co. v. Marino*,
 505 F. Supp. 3d 194 (W.D.N.Y. 2020) ..................................................9

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
 624 F.3d 123 (2d Cir. 2010) ..........................................................18, 20

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
 490 F.3d 130 (2d Cir. 2007) ..........................................................21, 36

*Starbucks Corp.*,
 Nos. 15-CA-290336 et al., 2023 WL 3254440 (NLRB Div. of Judges
 May 4, 2023)..........................................................................................6

*Starbucks Corp.*,
 372 NLRB No. 156 (Nov. 15, 2023) ....................................................32

*Starbucks Corp.*,
 19-CA-294579, 2023 WL 6379600 (NLRB Div. of Judges Sept. 28,
 2023) ....................................................................................................34

*Stern v. Cosby*,
 246 F.R.D. 453 (S.D.N.Y. 2007) ...........................................................8

*Strike3 Holdings, LLC v. Doe*,
 964 F.3d 1203 (D.C. Cir. 2020).............................................................8

*Thomas v. Union Carbide Agr. Prod. Co.*,
 473 U.S. 568 (1985)..............................................................................27

*United Nurses Assn's of Cal. v. NLRB*,
 871 F.3d 767 (9th Cir. 2017)..........................................................20, 29

*United States v. Campo*,
 140 F.3d 415 (2d Cir. 1998) .................................................................36

*United States v. Electro-Voice, Inc.*,
 879 F. Supp. 919 (N.D. Ind. 1995)........................................................2

*United States v. IBM Corp.*,
   83 F.R.D. 97 (S.D.N.Y. 1979) ................................................................ 4

*United States v. Johnson*,
   850 F.3d 515 (2d Cir. 2017) ................................................................ 36

*Va. Dep't of Corrs. v. Jordan*,
   921 F.3d 180 (4th Cir. 2019) ................................................................ 3

*Wilson v. Jersey Shore Steel Co.*,
   No. 4:20-CV-00524, 2020 WL 2064146 n.6 (M.D. Pa. Apr. 29, 2020) .... 2

*Yukos Capital S.A.R.L. v. Feldman*,
   977 F.3d 216 (2d Cir. 2020) ........................................................ 18, 20

**Statutes** ........................................................................ **Page(s)**

29 U.S.C. § 160(c) ................................................................ 16

29 U.S.C. § 160(e), (f) ........................................................ 15

29 U.S.C. § 160(j) ........................................................ passim

29 U.S.C. § 160(l) ................................................................ 33

**Rules** ............................................................................ **Page(s)**

Fed. R. Civ. P. 34(c) ............................................................ 12

Fed. R. Civ. P. 37 ........................................................ passim

Fed. R. Civ. P. 37(a)(3)(B); (b)(2) ...................................... 13

Federal Rule of Civil Procedure 45 .................................... 3, 12

Federal Rules of Appellate Procedure 32(a)(5)-(6), 32(a)(7)(B), and
   32(g)(1) ............................................................................ 38

Rule 37(b)(2) ........................................................................ 13

Rules 34, 37, and 45 ............................................................ 14

**Other Authorities** .................................................... **Page(s)**

8B Fed. Prac. & Proc. Civ. § 2289 ...................................... 13

NLRB Casehandling Manual, Part 1, Sec. 10012.1 (2023) .................. 15

This case involves an audacious, and thus far successful, effort by an employer to derail what is supposed to be a streamlined injunction proceeding to protect employee rights. Appellee Starbucks propounded overbroad and irrelevant discovery requests to numerous employees and their union that sought to scrutinize protected organizing activity. Regrettably, the district court indulged this fishing expedition, even after an NLRB administrative law judge ruled that Starbucks had violated employees' statutory rights. This Court should put a stop to it.

## I. Starbucks's project to radically expand the scope and availability of expedited discovery in Section 10(j) cases should be rejected.

Starbucks insists that discovery is routine in Section 10(j) cases.[1] In fact, most Section 10(j) cases are decided without discovery,[2] particularly in this Circuit.[3] And, when granted, discovery is often

---

[1] Answering 1. The Director's opening brief is abbreviated "Opening." Starbucks's answering brief is abbreviated "Answering."

[2] *See* Robert Iafolla, *Starbucks' Discovery Fights Stall Labor Injunction Cases*, Bloomberg Law (Mar. 31, 2023, 5:35 AM), https://news.bloomberglaw.com/daily-labor-report/starbucks-discovery-fights-are-stalling-labor-injunction-cases.

[3] *See, e.g.*, *Kreisberg v. HealthBridge Mgmt., LLC*, No. 3:12-CV-1299 (RNC), 2012 WL 6553103, at *5 n.8 (D. Conn. Dec. 14, 2012) (denying employer's discovery requests), *aff'd*, 732 F.3d 131 (2d Cir. 2013); *Mattina v. Kingsbridge Heights Rehab. & Care Ctr.*, 329 F. App'x 319,

tightly restricted, and is not extended to nonparties.[4] None of this is inconsistent with the Section 10(j) Manual's recognition that limited *party* discovery may be appropriate in other circumstances.[5] Thus, contrary to Starbucks's protestations, this case is not about the Board's obstruction of discovery but about Starbucks's brazen pursuit of an "outlier," "aggressive discovery strategy" that has improperly derailed

---

323 (2d Cir. 2009) (summary order), *aff'g* 2008 WL 3833949 (S.D.N.Y. Aug. 14, 2008) (discovery properly denied); *Dunbar v. Landis Plastics*, 977 F. Supp. 169, 176-77 (N.D.N.Y. 1997) (discovery unnecessary given the "extensive affidavit evidence"), *remanded on other grounds,* 152 F.3d 917 (2d Cir. 1998) (unpublished table decision); *see also Wilson v. Jersey Shore Steel Co.*, No. 4:20-CV-00524, 2020 WL 2064146, at *2 n.6 (M.D. Pa. Apr. 29, 2020) (denying discovery and hearing).

[4] *Overstreet v. Starbucks Corp.*, No. 2:22-cv-00676 (D. Ariz. 2022), ECF No. 16 (limited discovery against petitioner; no nonparty discovery); *Overstreet v. Absolute Healthcare*, No. 2:22-cv-00361 (D. Ariz. 2022), ECF No. 14 (single deposition of terminated employee); *Drew-King v. Amazon.com Servs., LLC*, No. 1:22-cv-01479 (E.D.N.Y. Mar. 30, 2022), ECF No. 31, at 11–12, 24, 39, 48 (depositions of four witnesses whose statements accompanied petition; no nonparty discovery); *United States v. Electro-Voice, Inc.*, 879 F. Supp. 919, 923 (N.D. Ind. 1995) (limited, expedited discovery where witness affidavits had not been disclosed).

[5] *Contra* Answering 2, 36–37. The Manual does not address nonparty discovery, as it is unprecedented in 10(j) litigation. *See* https://www.nlrb.gov/guidance/key-reference-materials/manuals-and-guides (March 2020). In any case, as the Section 10(j) Manual's preface states, it is "not a form of authority binding on the General Counsel or the Board." *Accord G & T Terminal Packaging Co. Inc. v. NLRB,* 459 F. App'x 19, 24 (2d Cir. 2012) (summary order).

what should be streamlined, expeditious 10(j) proceedings.[6] It is
Starbucks, not the Board, that is "running its playbook."[7]

> ### A. Starbucks's subpoenas should have been quashed or highly limited; the district court's failure to do so was an abuse of discretion.

Starbucks's extensive, overbroad, and coercive nonparty
subpoenas are unprecedented and fail the "more demanding and
sensitive inquiry" of Federal Rule of Civil Procedure 45.[8] Starbucks
attempts a rhetorical sleight of hand by citing Committee Notes to Rule
45 regarding the scope of nonparty discovery,[9] eliding that the question
here is one of burden, not scope. Making individual employees cull
through thousands of records to identify and redact documents of

---

[6] Above at n. 2; *see Kaynard v. MMIC, Inc.*, 734 F.2d 950, 954 (2d Cir. 1984) ("the intent of Congress in providing in § 10(j) [was] a swift interim remedy to halt unfair labor practices.").

[7] *Contra* Answering 47.

[8] *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019); *see In re Public Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005); *Corbett v. eHome Credit Corp.*, No. 10-cv-26, 2010 WL 3023870, at *3 (E.D.N.Y. Aug. 2, 2010). Starbucks cites no case to support its bare assertion that these cases are "incorrect" [Answering 32] in recognizing the "special weight" given to nonparty interests under Rule 45. *See id.*

[9] *Id.* at 33.

peripheral (at best) relevance is an oppressive and unreasonable expectation.[10]

The requests are also not relevant. Starbucks theorizes that discovery into the Union's media strategy is relevant to whether the Union, not Starbucks, chilled employees by publicizing the violations,[11] despite the Sixth Circuit's rejection of this argument.[12] Indeed, the Union's publicity of the Buffalo-area violations is of little consequence when Starbucks, a global company, itself widely disseminated some of its actions.[13] In any event, the record already establishes that the Union

---

[10] The court must consider the "size of and resources available" to the subpoena recipients. *United States v. IBM Corp.*, 83 F.R.D. 97, 108 (S.D.N.Y. 1979). The case cited by Starbucks at Answering 33 (*First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 23 (2d Cir. 1998)), is inapposite as it involved a subpoenaed multinational accounting firm.

[11] Answering 35. Starbucks misstates the record in suggesting that ALJ Muhl found "many" of its discovery requests relevant (Answering 24); in fact, the only information he found relevant was anonymized information about levels of employee union support over time, which the Director has no objection to providing. A381–84.

[12] *McKinney v. Starbucks Corp.*, 77 F.4th 391, 400 (6th Cir. 2023), *cert. pending*, No. 23-367. Contrary to Starbucks's claim, the Sixth Circuit reached this decision under the same two-factor 10(j) analysis as this Court applies. *Id.* at 397–98.

[13] Opening 39 n.144.

4

publicized Starbucks's labor violations,[14] so discovery into the Union's "media strategy"[15] is unnecessary.

Starbucks's attempt to justify discovery by accusing the Union and the Board of sensationalizing and "mischaracterizing" the facts, including Starbucks's point that fired employee Cassie Fleischer testified she was not "separated," is baseless.[16] In fact, the mischaracterization is Starbucks's, as ALJ Rosas found that Fleischer had been unlawfully terminated via constructive discharge.[17]

Starbucks's suggestion that *McKinney* supports the overbroad discovery allowed by the district court here also fails.[18] First, discovery in *McKinney* was much more limited: there, Starbucks issued a request for production *to the Agency* and deposed a few witnesses but did not seek broad nonparty discovery. Second, in that case, the 10(j) hearing

---

[14] A080–83 (employee shared recording with media), A091–92 (discussing news stories), A097–100 (Union's social media), A115 (employee spoke to press), A126 (Union social media posts on terminations), A134–37 (national impact of social media posts), A146 (media interest in Gen Z organizing).

[15] Answering 35.

[16] Answering 35–36 & n.4.

[17] A332–33.

[18] Answering 35–36.

occurred before the administrative record was available.[19] Here, the
district court stayed the 10(j) proceeding until the administrative
record, including just-and-proper evidence, was available.[20] So because
the administrative hearing at issue here included just-and-proper
evidence,[21] discovery was even less necessary.

Beyond the lack of relevance, Starbucks's subpoenas intruded
upon important confidentiality interests arising from the NLRA. The
district court was not free to discount those interests in a proceeding
under that very statute.[22] Instead, it should have protected those
interests as recognized in *Guess?, Inc.*,[23] which provides a tested,
appropriate framework consistent with the Federal Rules.[24] The district
court's refusal to give effect to NLRA policy was legal error.[25]

---

[19] *Compare McKinney v. Starbucks Corp.*, No. 2:22-cv-2292-SHL-cgc,
2022 WL 5434206 (W.D. Tenn. Aug. 18, 2022), *with Starbucks Corp.*,
Nos. 15-CA-290336 et al., 2023 WL 3254440 (NLRB Div. of Judges May
4, 2023).

[20] ECF 29; *compare* A155 (administrative case tried July 11–September
14, 2022) *with* A004 (10(j) petition filed June 21, 2022).

[21] A094, A147.

[22] *See* A447–48, A453–54, A499–500, A503–04.

[23] 339 NLRB 432 (2003).

[24] *Contra* Answering 31.

[25] *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83–85 (1982).

Starbucks's claim that the subpoena instructions already contained "extensive protections" for confidential, protected activity is meritless,[26] as those instructions contain such broad exceptions to those supposed protections that they are worthless. As previously noted,[27] and found by ALJ Muhl,[28] the exceptions swallow the rule. For example, while stating that the subpoenas do not seek evidence of Section 7 activity, the instructions also state that the exclusion only applies to activities that are "unrelated to matters that had or may have had an effect on other employee's [sic] interest in union organizing or . . . representation" or that "otherwise do not relate to whether Section 10(j) relief would be 'just and proper.'"[29] And the district court only allowed name redactions in paragraph 1(f).[30] Starbucks's notion that quashing a number of requests itself establishes a reasoned decision[31] does not

---

[26] *Id.* at 29.

[27] Opening 12 & n.41.

[28] A382–83.

[29] SSA 356, SSA 367.

[30] SA013 (*contra* Answering 31). And contrary to Starbucks's assertion that the Director took a "wait-and-see" approach [Answering 43], taking a definitive position that the subpoenas were unlawful would improperly prejudge a question the agency might adjudicate.

[31] *Id.* at 2, 19.

withstand scrutiny. If true, parties could simply lard up discovery with frivolous demands to justify others.

### B. Expedited discovery should be limited in breadth.

There is no support for Starbucks's novel assertion that expedited discovery encompasses the full scope of merits discovery.[32] Starbucks's own authority says otherwise: "a grant of expedited discovery does not open the door to discovery on all matters."[33] Courts consistently take account of the "breadth of the discovery requests" in deciding whether to approve them.[34] Starbucks's cases agree. *Stern v. Cosby* limited discovery solely to the issue of whether a party tampered with witnesses.[35] And *Strike3 Holdings, LLC v. Doe* permitted a subpoena to an ISP to identify an anonymous defendant.[36] The district court's order in this very case purported to grant "*limited,* expedited discovery."[37] And contrary to Starbucks's assertions that the Director has been

---

[32] Answering 26–27.

[33] 6 Moore's Fed. Prac. § 26.121 (2023), cited in Answering 28.

[34] *Id.*

[35] 246 F.R.D. 453, 458 (S.D.N.Y. 2007).

[36] 964 F.3d 1203, 1207 (D.C. Cir. 2020). The "good cause" standard discussed there is unrelated to expedited discovery. *Id.* at n.2.

[37] SA003 (emphasis added).

intransigent,[38] she was amenable to the nonparties' suggestion of more limited discovery.[39] Earlier, she sought a protective order as an alternative to quashing the subpoenas entirely, which the district court denied.[40] By failing to apply the proper standards for expedited and nonparty discovery and refusing to consider statutory confidentiality interests, the district court abused its discretion.

Starbucks contends that the Director waived or forfeited her argument that a heightened "good cause" standard applies to expedited discovery here.[41] Not true.[42] She consistently argued that Starbucks's subpoena requests were unreasonably overbroad and burdensome given the nature of the proceeding.[43] Nonetheless, parties are not limited "to the precise arguments they made" in their initial papers.[44] Even on

---

[38] Answering 1, 12, 32.

[39] ECF 117, at 10.

[40] ECF 44; *contra* Answering 32.

[41] Answering 26.

[42] *See* ECF 88, at 4–5 (arguing "good cause" discovery standard applied in preliminary injunction cases, citing *R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 210 (W.D.N.Y. 2020)); ECF 117, at 10–11 (same); ECF 122, at 4–5 (same); A477.

[43] ECF 44, at 10, 12, 15–18, 21.

[44] *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221 (2d Cir. 2006).

appeal, this Court will "entertain additional support that a party provides for a proposition presented below."[45] Starbucks responded to the Director's "good cause" argument.[46] It should not be heard to complain now.[47]

## II. The district court's failure to apply the correct legal standards and consider important factors warranted reconsideration.

The Director's repeated efforts to urge the court to accord its discovery decisions with relevant authority and apprise the court of new developments were wholly proper.

Starbucks claims that the district court "*did* 'carefully balance . . . confidentiality concerns'" in rejecting the NLRB's motions for reconsideration of its motions to quash Starbucks's subpoenas.[48] But the district court's blithe statement that it had "already" considered the appropriate confidentiality concerns[49] is not evidence that the district court actually conducted the appropriate analysis. To pay lip service (at

---

[45] *Id.*

[46] ECF 124, at 15.

[47] *See Atkins v. New York City,* 143 F.3d 100, 103 (2d Cir. 1998) (noting that litigants can "waive[] the waiver point").

[48] Answering 38 (quoting SA024).

[49] SA024.

best) to these protections fails to demonstrate that the district court actually took key statutory confidentiality concerns into account.

Starbucks's complaints also ignore that this Court itself suggested reconsideration was warranted, given the decision of ALJ Rosas in the NLRB proceeding underlying the Section 10(j) case.[50] The Director moreover never argued the separate ALJ decision in the *Guess?* proceeding was controlling.[51] Rather than being "perverse[,]"[52] considering relevant ALJ findings would reflect sound judgment and discretion. And other developments—a decertification petition at one of the stores involved and the Sixth Circuit's decision in *McKinney*—compelled a change in course,[53] and reconsideration of the court's prior orders.

---

[50] *In re Workers United*, No. 22-3229 (2d Cir. 2023), ECF 77.

[51] *Contra* Answering 37; *see* Opening 42; ECF 117, at 10.

[52] Answering 37.

[53] Opening 42.

III.  **Neither the Federal Rules nor the district court's inherent powers permitted the court to dismiss the Section 10(j) petition because nonparties refused to comply with subpoenas.**

A.  *Rule 45 remains the proper means to obtain compliance with nonparty subpoenas, a method the district court never attempted.*

With respect to document requests like the ones at issue here, "Rule 37 by its terms applies only to a motion to compel production from a *party* under Rule 34."[54] And "Rule 34 in turn now [following 1991 amendments to that rule] provides that motions to compel production from non-parties are governed by Rule 45."[55]

Despite this clear delineation of authority in the text of the rules, Starbucks posits its own textual interpretation: "Rule 37 applies both to parties who fail to 'provide' discovery themselves and to parties who 'fail[] to obey an order' to '*permit* discovery.'"[56] Starbucks thus argues

---

[54] *Cruz v. Meachum*, 159 F.R.D. 366, 368 (D. Conn. 1994); *see also Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1364 (2d Cir. 1991) (noting lack of support for "the proposition that a pleading may be struck as a contempt penalty for non-compliance with a subpoena").

[55] *In re Exxon Valdez*, 142 F.R.D. 380, 385 (D.D.C. 1992) (citing Fed. R. Civ. P. 34(c) ("*As provided in Rule 45*, a nonparty may be compelled to produce documents and tangible things or to permit an inspection")) (emphasis added).

[56] Answering 50 (quoting Fed. R. Civ. P. 37) (emphasis Starbucks's).

the word "permit" expands the reach of the Rule to authorize dismissal sanctions based on independent, nonparty noncompliance.

This is nonsense. Rule 37 explicitly limits its reach to orders under discovery rules applicable only to parties or—in limited circumstances—nonparty *deponents* subject only to contempt sanctions.[57] The word "permit" was added to Rule 37(b)(2) in 1970 because some forms of discovery now encompassed by the rules, such as party depositions under Rule 30, allowing entry to property, testing, inspecting or photographing tangible things, or submitting to an examination, do not require a party to "produce" anything.[58] It was not, as Starbucks implies, added to extend the reach of Rule 37 to nonparty subpoenas.

Here, the subpoenaed nonparties have persistently maintained the subpoenas were improper and have pursued every means available to them to obtain review.[59] The district court could, and indeed was

---

[57] Fed. R. Civ. P. 37(a)(3)(B); (b)(2).

[58] *See* Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2289, n.1 (3d ed.) (2023) (discussing Advisory Committee Notes); *Gradford v. McDougall*, No. 1:17-CV-00575-DAD-GSA-PC, 2019 WL 1078356, at *4 (E.D. Cal. Mar. 7, 2019).

[59] *See, e.g.*, ECF 42, 43, 49, 53, 64, 81, 102-1, 108, 123.

obligated to, hold them in contempt if it deemed compliance required; contempt is the sole mechanism provided by Rules 34, 37, and 45 to address nonparty subpoena noncompliance. Yet the district court refused to do so, instead inexplicably sanctioning the Director.

The district court justified this action with an *ipse dixit* statement that contempt would be ineffective because the NLRB's *Guess?* proceeding "would persist."[60] Starbucks provides no further elucidation on this point; its brief argues without reasoning that "[m]ost obviously, holding 'subpoenaed nonparties in contempt' would be pointless" because of the *Guess?* proceeding.[61] But neither the court below nor Starbucks explain how the Board's proceeding could negate the court's unquestioned power to immediately wield contempt sanctions, including fines and incarceration, to compel compliance from nonparties.[62] After all, a Board decision in the *Guess?* case may be months or more in the future. And even if the Board orders a remedy requiring the subpoenas

---

[60] A506.

[61] Answering 43.

[62] *Compare Hester v. Vision Airlines, Inc.*, 687 F.3d 1162 (9th Cir. 2012) (district court "thoroughly" discussed inadequacy of other sanctions in three-and-a-half-page portion of written order).

withdrawn (which it may not), such an order would have no effect unless and until it was enforced by a reviewing court of appeals— perhaps this very Court.[63]

Finally, Starbucks's curious suggestion that the Director should have "instructed the subpoenaed nonparties not to comply, thereby inviting contempt proceedings[,]"[64] misses the mark thrice. First, she had no reason to do, as the nonparties had already made the decision not to comply, and they are not under the Director's control.[65] Second, neither she nor her agency staff are authorized to give such advice.[66] Third, under Starbucks's own cases, doing so would have been sanctionable conduct—parties generally cannot tell nonparties not to comply with subpoenas.[67]

---

[63] *See* 29 U.S.C. § 160(e), (f); *Myers v. Bethlehem Shipbuilding Corp.*, 303 US 41, 49 (1938) ("No power to enforce an order is conferred upon the Board."); *see also* Opening 63.

[64] Answering 2–3.

[65] Opening 45–47.

[66] NLRB Casehandling Manual, Part 1, Sec. 10012.1 (2023) ("Although Board agents are obligated to provide information [regarding the NLRA], they may not give legal advice").

[67] Answering 41 (citing *Moses v. Am. Apparel Retail, Inc.*, No. 13-cv-2753-SHL-DKV, 2015 WL 4665968, at *2 (W.D. Tenn. Aug. 6, 2015));

### B. It was error to deploy Rule 37 sanctions against the Director for carrying out her statutory duties.

Starbucks's effort to rehabilitate the district court's defective analysis regarding the Rule 37 dismissal is unavailing. Initially, the NLRB did not "launch . . . proceedings within the agency to prevent document production[.]"[68] Indeed, the agency "cannot initiate its own proceedings; implementation of the Act is dependent upon the initiative of individual persons."[69] Such proceedings are instead "launched" by the filing of charges by private persons—here, the nonparties who had already refused to produce subpoenaed records.[70]

Nor has the NLRB, as a party, done anything to warrant sanction—much less *terminating* sanctions.[71] As discussed above in Section III-A, the district court did not engage in any serious examination of alternative sanctions, including against those able to comply. Nor did any prolonged delay occur because of the Director's

---

Answering 48 (citing *Fox Indus., Inc. v. Gurovich*, No. 2:03-cv-05166-SJF-WDW, 2006 WL 2882580, at *10 (E.D.N.Y. Oct. 6, 2006)).

[68] Answering 40.

[69] *NLRB v. Indus. Union of Marine & Shipbuilding Workers, Loc. 22*, 391 U.S. 418, 424 (1968) (cleaned up).

[70] 29 U.S.C. § 160(c)

[71] Opening 44–46, 51.

16

actions—upon receiving the conditional dismissal order, she immediately signaled her inability to comply, citing statutory and regulatory obligations.[72] What delay has occurred in this case occurred much earlier, and was due to the District Court's decision to stay this case while the noncomplying nonparties sought mandamus from this Court.[73]

### C. Inherent power did not permit the district court to dismiss this case.

Starbucks argues that even if the district court's dismissal was not authorized by Rule 37, it was nonetheless permissible under the court's inherent power.[74] But because "the district court did not invoke its inherent powers in awarding the sanctions"—instead citing Rule 37 and equitable principles—this Court "need not speculate as to whether these powers could justify the sanctions."[75]

In any event, inherent authority does not permit dismissal here. The Director had not "disobey[ed] the court's" prior orders when the

---

[72] A511–14.

[73] ECF 81; *see also* Opening 49 (discussing inapplicability of remaining Rule 37 factors).

[74] Answering 48.

[75] *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1323 (11th Cir. 2001).

17

district court issued its conditional dismissal order.[76] And in *Yukos Capital S.A.R.L. v. Feldman*, cited by Starbucks, this Court held that "courts should impose sanctions pursuant to their inherent authority only in rare circumstances" and, in the discovery context, "that discretion should be exercised with even more restraint than usual."[77] "Inherent power sanctions are thus not a primary mechanism by which a party can obtain relief for a discovery abuse[.]"[78] Inherent power is not a kludge to replace "strict adherence to the clearly delineated procedures" of an applicable rule.[79]

Starbucks's argument that the Director's actions in a separate statutory proceeding authorized by law "thwart[ed]" compliance with the discovery orders,[80] gets things backwards. Nonparties' subpoena

---

[76] *Mitchell v. Lyons Pro. Servs., Inc.*, 708 F.3d 463, 467–68 (2d Cir. 2013).

[77] 977 F.3d 216, 235 (2d Cir. 2020).

[78] *Yukos*, 977 F.3d at 236.

[79] *Indep. Prods. Corp. v. Loew's Inc.*, 283 F.2d 730, 733 (2d Cir. 1960); *see also S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 145, n.7 (2d Cir. 2010) (use of inherent power instead of applicable civil rule is "needless and confusing" and "can only obscure analysis of the problem").

[80] Answering 42–48.

noncompliance preceded the *Guess?* proceeding[81] and there is every indication it would have persisted, at least until appellate review of the discovery orders occurred. This is thus not a case like *Moses* or *Fox*, where a party is directing or advising a nonparty not to comply with a court order.[82]

Nor were the Director's actions the product of bad faith, willfulness, or fault.[83] Starbucks dismisses the established presumption of regularity with an incorrect assertion that all official acts are subject to "probing, in-depth review."[84] But Starbucks's citation for that point, to *Overton Park,* is telling, since that case applies to reviewable final agency actions, not unreviewable prosecutorial decisions.[85]

The correctness of the Director's actions are underscored by the agency ALJ's determination that Starbucks violated the Act through its

---

[81] Opening 13–15.

[82] *Contra* Answering 41, 49–50.

[83] *In re Att'y Gen. of U.S.*, 596 F.2d 58, 66 (2d Cir. 1979).

[84] Answering 49 (citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971)).

[85] *Compare Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 43 (1983), *with NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 163 (2d Cir. 2021).

discovery, thus creating more than "a fair ground of doubt" that the Director's pursuit of that charge was blameworthy.[86] Accordingly, there is no "clear and convincing evidence of bad faith," a necessary prerequisite to sanction under inherent powers.[87]

>    ### D. The Guess? proceeding was a proper exercise of the agency's statutory authority to prevent and remedy unfair labor practices.

Starbucks's only response to the fact that the Director was acting pursuant to separate legal duties,[88] is its assertion that the *Guess?* case is beyond the agency's statutory authority.[89] But it points to no prohibition in the statute or explanation why coercive employer surveillance should be irremediable when "simply accomplish[ed] by subpoena."[90] Any dispute about the propriety of the *Guess?* case can only be resolved by a circuit court upon review of a final Board order.[91] Moreover, this Court has held that where a party is faulted under Rule

---

[86] *See S. New England Tel.*, 624 F.3d at 145.

[87] *Yukos*, 977 F.3d at 235.

[88] *See* Opening 48–49.

[89] Answering 54.

[90] *United Nurses Assn's of Cal. v. NLRB*, 871 F.3d 767, 788 (9th Cir. 2017).

[91] Opening 63.

37 for actions taken pursuant to other laws, sanctions are inappropriate and "the matter is at an end."[92]

Starbucks also argues that the General Counsel could have convinced the Board to dismiss the *Guess?* proceeding, describing the General Counsel as the Agency's "right hand," and the Board as the Agency's "left hand."[93] This analogy ignores the Agency's structure and history. With passage of the 1947 Taft-Hartley Act, Congress restructured the Agency so that the "General Counsel of the Board [w]ould be independent of the Board's supervision and review."[94] Indeed, the Fifth Circuit has described the "stark division of labor between the General Counsel and the Board[,]" and rejected the notion they are "fully and inextricably linked[.]"[95]

---

[92] *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 139 (2d Cir. 2007).

[93] *See* Answering 46.

[94] *NLRB v. UFCW, Loc. 23*, 484 U.S. 112, 117-18 (1987); *see also Int'l Ladies' Garment Workers Union, Loc. 415-475 v. NLRB*, 501 F.2d 823, 829 (D.C. Cir. 1974) ("Congress provided for a General Counsel whose prosecutorial acts were not to be subject to Board countermand").

[95] *See Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 443 (5th Cir. 2022).

As the Director already explained, the General Counsel cannot unilaterally withdraw a complaint once it is before the Board.[96] And the choice to request such an action is among the array of decisions committed to her unreviewable statutory discretion; there is no lawful basis for a court to demand it.[97]

## IV. Starbucks's separation of powers argument inverts the reality of this case.

Starbucks argues that the NLRB's adjudication of a distinct statutory question committed to its authority violates separation of powers principles.[98] It also asserts without basis that the agency sought to restrict what information could be used in the 10(j) proceeding.[99] But the Board's determinations involve public rights specifically and exclusively committed to its jurisdiction.[100] The impermissible interference in this case runs the opposite way.

---

[96] *See* Opening 49–50.

[97] *UFCW, Loc. 23*, 484 U.S. at 126.

[98] Answering 52.

[99] *Id.* The *Guess?* proceeding only examines what requests are unlawful, not how information obtained lawfully may be used.

[100] As explained above at Section III-D, the agency is authorized by statute to conduct this inquiry, *contra* Answering 54.

### A. *The Guess? proceeding does not violate separation of powers.*

Starbucks contends that the NLRB has "purported to set the metes and bounds of appropriate discovery on 10(j) questions" by adjudicating claims that Starbucks's 10(j) discovery requests violate the NLRA.[101] According to Starbucks, this breaches separation of powers principles because it results in "control" of an Article III court's judgment by an "officer in the executive department."[102]

Starbucks does not apply the appropriate standard. The Supreme Court uses two different approaches. In situations like the district court's conditional dismissal order, where there is "usurpation" or a branch increasing powers at the expense of another, a bright-line test controls.[103] But as to the issue raised by Starbucks, the legal question is whether a non-Article III forum, the NLRB, is exercising "essential attributes of judicial power[.]"[104] This "pragmatic, flexible" inquiry "is guided by . . . practical attention to substance rather than doctrinaire

---

[101] Answering 53.

[102] *Id.* at 54.

[103] *Morrison v. Olson*, 487 U.S. 654, 694 (1988).

[104] *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 851 (1986).

reliance on formal categories."[105] The Court should consider "the origins and importance of the right to be adjudicated, and the concerns that drove" Congress's design.[106]

Here, the rights at issue in the *Guess?* proceeding are public rights created by Congress.[107] And employee self-organization "is a fundamental right."[108] Initial adjudication of such rights may be assigned to an administrative forum,[109] even if a dispute involves competing legal rights or interests, including constitutional issues.[110] Congress's purpose in assigning initial adjudication to the Board was to obtain "uniform application" and avoid "diversities and conflicts" resulting from "a variety of local procedures and attitudes toward labor controversies."[111] The NLRA is thus a "specialized area[] having

---

[105] *Id.* 847–48.

[106] *Id.* at 851.

[107] *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 366 (1940).

[108] *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33 (1937).

[109] *Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 449 (1977).

[110] *See, e.g., Lechmere, Inc. v. NLRB*, 502 U.S. 527, 534 (1992).

[111] *Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776*, 346 U.S. 485, 490 (1953).

particularized needs and warranting distinctive treatment."[112] The Board's consideration of whether Starbucks's subpoenas were an unfair labor practice applies its specialized knowledge of labor disputes.[113] It is legally distinct, albeit factually related, to the district court discovery disputes.

Considering the "congressional plan at issue and its practical consequences[,]"[114] there is nothing untoward about the *Guess?* proceeding. It is simply a consequence of the Board being the sole "public agent chosen by Congress" to enforce the Act.[115]

> ### B. Board proceedings do not interfere with judicial functions and its orders do not have binding effect unless enforced by an Article III court.

The Supreme Court long ago observed that "until the Board's order has been affirmed by the appropriate . . . Court of Appeals, no penalty accrues for disobeying it."[116] Indeed, contrary to Starbucks

---

[112] *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 62, 102 (1982).

[113] *See NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 266 (1975).

[114] *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986).

[115] *Nathanson v. NLRB*, 344 U.S. 25, 27 (1952).

[116] *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938).

hyperbolic claims,[117] "punitive measures" are unavailable to the Board; it is limited to make-whole relief.[118] And whether a particular Board remedy "trenches" upon other policies does not implicate separation of powers, because that issue can only be decided on review of a final Board order.[119]

Nothing the Board does will "countermand" the final judgment of a federal court.[120] While not every judicial act has preclusive effect, enforcement of Board remedies, like any other proceeding, is subject to the law of judgments.[121] Accordingly, Starbucks's reliance on *Plaut v. Spendthrift Farm, Inc.*,[122] which involved Congress permitting litigants to reopen certain dismissed cases, is misplaced. And review of Board findings and remedies by an Article III court "preserves the appropriate exercise of the judicial function" animating separation of power

---

[117] Answering 44.

[118] *Loc. 57, Int'l Ladies' Garment Workers' Union v. NLRB*, 374 F.2d 295, 303 (D.C. Cir. 1967).

[119] *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 152 (2002). In any event, there is no conflict here as *Guess?* is fully consistent with the Federal Rules.

[120] *Contra* Answering 44.

[121] Opening 62.

[122] 514 U.S. 211, 211 (1995); Answering 54.

principles.[123] This is unlike the district court's dismissal order, which sought to direct the "*whole* power of another department" in support of judicial objectives.[124]

### C. Starbucks's remaining constitutional arguments lack merit.

Starbucks gestures at two other constitutional arguments: (1) the NLRB is violating due process by acting simultaneously in a prosecutorial and adjudicative role, and (2) the *Guess?* proceeding violates the First Amendment right to petition the government.[125] Neither has merit.

Case law universally rejects the proposition that the mere combination of prosecutorial and adjudicative functions in a single agency violates due process.[126] By the same token, seeking injunctive relief under Section 10(j) does not violate the Board's obligation to avoid

---

[123] *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 592 (1985) (cleaned up).

[124] *Mistretta v. United States*, 488 U.S. 361, 381 (1989).

[125] Answering 57–58.

[126] *See, e.g.*, *AT&T v. FCC*, 449 F.2d 439, 455 (2d Cir. 1971) (observing that "the case law generally rejects the proposition that the combination of judicial and adversary functions in one agency is a denial of due process.").

prejudging the facts of a labor dispute.[127] Nor are any "nonreciprocal"

evidentiary rules being employed in litigation before the Board;[128]

unfair labor practice cases need not and do not authorize prehearing

discovery for any party.[129]

Starbucks's throwaway citation to the First Amendment's Petition

Clause (Answering 58) is even further afield. The right to petition the

government does not entail the right to engage in litigation conduct

with an illegal objective,[130] because employers may not "simply

accomplish by subpoena that which they are barred from doing by

---

[127] *NLRB v. Sanford Home for Adults*, 669 F.2d 35, 37 (2d Cir. 1981).

[128] Answering 58.

[129] *NLRB v. Interboro Contractors, Inc.*, 432 F.2d 854, 858 (2d Cir. 1970).

*Drukker Commc'ns v. NLRB*, 700 F.2d 727, 733 (D.C. Cir. 1983), cited by Starbucks, is not on point. There, the General Counsel prohibited an NLRB agent who was a fact witness to key events from testifying as to the agent's personal knowledge. Here, as noted above at n.99, the *Guess?* case seeks to terminate a fishing expedition that an ALJ has found violates employees' Section 7 rights; it does not and cannot limit the introduction of evidence in the unfair labor practice case underlying this Section 10(j) request. Put differently, the *Guess?* case is about whether Starbucks's efforts to obtain evidence violate the NLRA, not about how it can use the evidence it already has in the 10(j) proceeding.

[130] *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 737 n.5 (1983).

law."[131] If Starbucks's discovery requests violated the NLRA under

*Guess?*, the Petition Clause is irrelevant.[132]

## V. This Court should direct the requested injunction or remand this case with instructions.

### A. Starbucks had a full and fair opportunity to present evidence on the just-and-proper element of Section 10(j).

Introducing "just and proper" evidence before the ALJ is far from

"unprecedented."[133] ALJs regularly hear testimony on the chilling effect

of an employer's alleged violations, information that is relevant to

whether injunctive relief is "just and proper" but generally irrelevant to

the administrative proceeding.[134] Courts have relied on administrative

record harm evidence when deciding whether to grant 10(j) relief.[135]

---

[131] *United Nurses,* 871 F.3d at 788.

[132] *Id.* at 786–88.

[133] Answering 8.

[134] NLRB Division of Judges Bench Book: An NLRB Trial Manual 184–85 (Jeffrey D. Wedekind, et al. eds., Apr. 2023).

[135] *See, e.g. Chester v. Grane Healthcare Co.*, 666 F.3d 87, 102 (3d Cir. 2011) (discussing evidence of chilling impact adduced at ALJ hearing); *Diaz v. Pro. Transp., Inc.*, 996 F. Supp.2d 1215, 1223 n.4 (M.D. Fla. 2014) (ALJ allowed "just and proper" evidence "for the sake of efficiency, and to apprise [the employer] of what evidence the Regional Director would be relying upon in the district court").

Starbucks had ample opportunity to elicit evidence testing the Board's allegations of chilled union support.[136] Indeed, the district judge encouraged the parties to question witnesses about "just and proper" evidence during the administrative hearing.[137] Starbucks questioned each of the employees to whom it later directed subpoenas on their "just and proper" testimony.[138] Starbucks elicited testimony about whether: employees did not support the Union because they did not want to pay dues,[139] employees actually feared retaliation,[140] and other sources of chill.[141] Starbucks misrepresents the record by stating that it was denied "any document discovery in administrative proceedings."[142] In fact, the ALJ specifically provided for the production of rebuttal

---

[136] *Contra* Answering 60.

[137] ECF 38, at 33.

[138] A078-79, A086, A094, A096, A373, A375, A460; *see also* ECF 44, at 7 n.3, 7–8.

[139] A083, A096.

[140] A124–25, A127–28.

[141] A080–83, A091–92, A096–100, A115, A126, A134–37, A146.

[142] Answering 13.

evidence to Starbucks.[143] Starbucks fails to show any compelling reason for the district court to duplicate efforts.[144]

This evidence was sufficient for the ALJ to find Starbucks committed many violations of the kind long-recognized as inherently chilling.[145] Starbucks attacks the conduct of the Union activists it discharged,[146] yet the ALJ considered that evidence[147] and determined that these terminations were unlawful.[148] Starbucks's dismissal of *Jamaica Towing*,[149] is beside the point; that case explains that violations like Starbucks's have long been recognized as inherently harmful.[150]

---

[143] SSA 348.

[144] Answering 60–61.

[145] *See, e.g., Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1053 (2d Cir. 1980) (discharging union supporters risks "a serious adverse impact on employee interest in unionization"); *NLRB v. Williams Enters.*, 50 F.3d 1280, 1288 (4th Cir. 1995) (threats of loss of employment "are assumed to be 'highly coercive'").

[146] Answering 7.

[147] A243–44, A254–55, 261–63, A272–74.

[148] A333–37.

[149] Answering 62.

[150] *NLRB v. Jamaica Towing, Inc.,* 632 F.2d 208, 212–13 (2d Cir. 1980).

The record supports granting the injunction. As the "just and proper" evidence shows, Union support is waning and employees fear Starbucks's response to their unionization efforts.[151] Starbucks's violations have harmed employee rights in a manner that will be irreparable, if left unremedied pending a Board order. One decertification petition (dismissed by the Board)[152] does not override the rich record demonstrating an injunction is "just and proper."[153] There is reasonable cause to believe unfair labor practices were committed and the requested relief is just and proper.

---

[151] The Cortes/Karam *amicus* brief (at 5–6) is on behalf of two Buffalo-area employees, not all the employees that allegedly signed the decertification petition. Their motivation to circulate the decertification petition cannot be ascribed to the rest of the employees.

[152] 372 NLRB No. 156 (Nov. 15, 2023).

[153] *McKinney ex rel. NLRB v. Southern Bakeries, see* Cortes/Karam 9*, is distinguishable, as no unrefuted evidence exists here that a majority of employees no longer support the Union and have not for years. *See* 786 F.3d 1119, 1124–25 (8th Cir. 2015). Rather, there is evidence that Starbucks discharged Union supporters. By systematically terminating Union supporters, Starbucks is able to hire a non-union workforce and weaken support for the Union. *See Hoffman*, 247 F.3d at 369. The appropriate status quo to protect is the conditions prior to the unfair labor practices. *Id.*

### B. This Circuit has previously directed injunctions when analyzing 10(j) factors anew.

This Circuit has directed injunctions when the district court did not fully consider both prongs of the 10(j)/10(l) test.[154] In *Kaynard v. Independent Routemen's Association*, this Court directed entry of a Section 10(l) injunction, even though the district court made insufficient reasonable cause findings and no determination on the "just and proper" prong.[155] In *Hoffman v. Inn Credible Caterers, Ltd.*, the district court failed to analyze reasonable cause, dismissing the petition on "just and proper" grounds.[156] This Circuit found reasonable cause, reversed the district court's just-and-proper analysis, and remanded the case to enter the injunction.[157] It did not merely supplement the district court's decision, but fully analyzed one prong for the first time. Other circuits have similarly directed 10(j) injunctions.[158]

---

[154] 29 U.S.C. § 160(l). The statutory text belies Starbucks's statement (Answering 60 n.7) attempting to distinguish Section 10(l) cases.

[155] 479 F.2d 1070, 1072 (2d Cir. 1973).

[156] 247 F.3d 360, 365–66 (2d Cir. 2001).

[157] *Id.* at 370.

[158] *Pascarell v. Vibra Screw, Inc.*, 904 F.2d 874, 879, 882 (3d Cir. 1990) (district court failed to determine reasonable cause and misinterpreted just and proper standard, which "must recognize the public interest

Considering that 10(j) is a form of equitable relief, this Court has numerous options. First, this Court could direct entry of the injunction as requested or remand as to the scope of the order beyond the affected stores.[159] The Court may also remand with instructions to quash the subpoenas and decide the 10(j) on the existing record. Finally, this Court could remand with instructions to modify the subpoenas or enter a new protective order recognizing NLRA confidentiality interests.

## VI. The district judge's statements undermine the appearance of justice; reassignment is warranted.

Although reassignment is considered an extraordinary remedy, this is an extraordinary case where an objective observer might

---

implicit in protecting the collective bargaining process"); *Aguayo v. Tomco Carburetor Co.*, 853 F.2d 744, 750–51 (9th Cir. 1988) (district court did not determine reasonable cause and concluded without explanation that interim relief was not necessary; circuit remanded with instructions to issue order granting petition).

[159] If remanded on scope, the district court should take notice of other proceedings showing Starbucks's nationwide unfair labor practices. *See Overstreet v. United Bhd. of Carpenters*, 409 F.3d 1199, 1203 n.7 (9th Cir. 2005) (courts may take judicial notice of administrative decisions not in the district court record); *Starbucks Corp.*, No. 19-CA-294579, 2023 WL 6379600 (NLRB Div. of Judges Sept. 28, 2023) (Starbucks has a "demonstrated proclivity for violating the Act and infring[ing] upon the statutory rights of its employees in any number of means" during organizing efforts) (citing cases).

reasonably question the judge's impartiality.[160] The district judge did not "merely" question the fairness of Board proceedings.[161] He accused the Region of "hiding" evidence, and denigrated the integrity of the Board's statutory process as "repugnant to notions of fairness" and obstructing the court case.[162] Specifically, he made clear his opinion that the Board's underlying administrative proceeding was unfair.[163] He also complained that the Board's *Guess?* proceeding had been unfair.[164] He described the Region's investigative process as a "hide-the-ball tactic,"[165] and the Region's statutory duty to investigate the Union's charge over the subpoenas as "obstruct[ing] discovery[.]"[166] Viewed

---

[160] *Ligon v. City of N.Y.*, 736 F.3d 118, 128 (2d Cir. 2013).

[161] Answering 63–64.

[162] *See, e.g.*, A418, A429, A460, A480–81, A487, A491, A497, A502, A505.

[163] A460 (the court asked, "isn't it also in the public interest to have a proceeding here, a 10(j) proceeding here that's fair?" And Regional counsel responded, "we don't agree with the idea that our proceeding was unfair.").

[164] A480 (after noting the length of time this discovery dispute has taken, "instead, the NLRB went back and proceeded with its *Guess?* proceeding and obtained a ruling from the ALJ that went contrary to what I ruled. Is there anything unfair about that?").

[165] A418, A502.

[166] A487.

together, a reasonable person could find that the district judge's statements exhibited bias and question the court's impartiality. [167]

Since the district court did not conduct evidentiary hearings or reach a decision on the merits oqf the petition, reassigning the case would not waste or duplicate efforts.[168] Thus, reassignment is appropriate to preserve the appearance of justice.

## CONCLUSION

Because Starbucks fails to present any convincing argument supporting affirmance of the decision below, the Court should remand this case with instructions directing an injunction or other appropriate proceedings and direct the district court to reassign this matter.

---

[167] *See United States v. Campo*, 140 F.3d 415, 420 (2d Cir. 1998); *Shcherbakovskiy*, 490 F.3d at 142.

[168] *See United States v. Johnson*, 850 F.3d 515, 525 (2d Cir. 2017).

Respectfully submitted,

LAURA T. VAZQUEZ
 *Deputy Assistant General Counsel*
KEVIN P. FLANAGAN
 *Deputy Assistant General Counsel*
PAUL A. THOMAS
 *Supervisory Trial Attorney*

/s/ David P. Boehm
DAVID P. BOEHM
 *Trial Attorney*

MADELINE Y. CORKETT
 *Trial Attorney*
MICHAEL S. DALE
 *Trial Attorney*

JENNIFER A. ABRUZZO
 *General Counsel*
PETER SUNG OHR
 *Deputy General Counsel*
RICHARD A. BOCK
 *Associate General Counsel*
NANCY E. KESSLER PLATT
 *Associate General Counsel*
RICHARD J. LUSSIER
 *Deputy Assoc. General Counsel*
DAWN L. GOLDSTEIN
 *Deputy Assoc. General Counsel*
ROBERT N. ODDIS
 *Assistant General Counsel*

National Labor Relations Board
1015 Half Street, S.E., 4th Floor
Washington, DC 20003
202-273-4202

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(a)(5)-(6), 32(a)(7)(B), and 32(g)(1), the Board certifies that its final brief contains 6970 words of proportionally spaced, 14-point type, and the word-processing software used was Microsoft Word for Office 365. The Board further certifies that the PDF file submitted to the Court has been scanned for viruses using Microsoft Defender and is virus-free according to that program.

/s/ David P. Boehm
David P. Boehm
Attorney
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-4202

Dated at Washington, DC
this 11th day of December 2023

# CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system. I certify further that the foregoing document was served on all parties or their counsel of record through the appellate CM/ECF system.

/s/ David P. Boehm
David P. Boehm
Attorney
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-4202

Dated at Washington, DC
this 11th day of December 2023